HARRY C. OLEWILER, Petitioner *v.* PATRICK
J. BRADY

[No. 38, October Term, 1945.]

*Decided November 30, 1945.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

Harry C. Olewiler, appeared on brief in *pro per*.

*William Curran, Attorney General*, and *J. Edgar Harvey, Assistant Attorney General*, appeared on brief for appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal under Section 3C of Article 42 (Acts of 1945, Chapter 702) from an order refusing to issue a writ of *habeas corpus*. The appellant is confined in ,the penitentiary under a sentence of life imprisonment for murder. He contends (or means to contend) that he is deprived of liberty without due process of law, and is denied the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States.

In substance, his petition aims to allege that: The deceased was shot and killed while committing the "felony" (*cf. Bowser v. State*, 136 Md. 342, 344, 110 A. 854) of "daylight burglary" (Code, 1939, Art. 27, Sec. 34), having broken and entered appellant's outhouse and taken a "boat pole" therefrom. He "advanced toward appellant in an aggressive manner," apparently "reaching for a weapon." Appellant "in taking a backward step stumbled" and "thereby fired" his rifle. He was "seized without a warrant," and "his rifle was seized at the same time and was introduced as evidence against him at the trial." He pleaded not guilty, was tried before a jury, and had the assistance of counsel for his

defense. "The State exceeded its jurisdiction in jury challenges." While on the witness stand he was "instructed by the State's Attorney to demonstrate the position in which he was at the moment the shot was fired." There was no "compelling force" at the time of the demonstration, and no objection by his counsel.[1]

As grounds for discharge from imprisonment, appellant sets up (1) the maxim that "every man's house is his castle" and the right of self-defense and protection of his property and (2) the privileges against unreasonable searches and seizures and self-incrimination under Articles 26 and 22 of the Declaration of Rights.

These grounds are all without merit. "The writ of *habeas corpus* cannot be made, unless it be by express statute, to perform the functions of a writ of error, in bringing under review a judgment or sentence of a competent tribunal, simply for errors or irregularities in the proceedings, or in the rendition of the judgment or sentence; that must be done by some more direct and appropriate proceeding." *State v. Glenn,* 54 Md. 572, 608. *Cf. Johnson v. Zerbst,* 304 U. S. 458, 465, 82 L. Ed. 1461. Still less can *habeas corpus* be used to review the verdict of a jury on disputed facts. "An imprisonment, under a sentence by a Court or magistrate of competent jurisdiction, is not unlawful, unless the sentence, for some cause to be made apparent, be not merely erroneous but an absolute nullity; though if it be shown to be such nullity, the party is entitled to his immediate discharge." *State v. Glenn, supra; Cf. Price v. Clawns,* 180 Md. 532, 534-537, 25 A. 2d 672. Recent Supreme Court cases hold that through violation of certain constitutional rights in criminal procedure a trial court may lose its jurisdiction "in the course of the proceedings" and its judgment may therefore be void. *Johnson v. Zerbst, supra,* 304 U. S. 468, 82 L. Ed. 1461; *Smith v. O'Grady,* 312 U. S. 329, 334, 85 L. Ed. 859; *Betts v. Brady,* 316 U. S. 455, 86 L. Ed. 1595; *Williams v.*

---

[1] No transcript of the testimony and proceedings at the trial was filed with the petition.

*Kaiser,* 323 U. S. 471, 65 S. Ct. 363[2]. Such violations of constitutional rights do not include mere error as to the number of peremptory challenges of jurors or any of the grounds for discharge set up in the instant case. *Cf. Ex parte Hull,* 312 U. S. 546, 550-551, 85 L. Ed. 1034. Arrest of a murderer and seizure of the weapon with which the murder was committed is not an unreasonable search or seizure. *Lawrence v. State,* 103 Md. 17, 37, 63 A. 96. Appellant's contention as to self-incrimination is "an extravagant extension" of the constitutional privilege. *Holt v. United States,* 218 U. S. 245, 252, 54 L. Ed. 1021, and of our decision in *Allen v. State,* 183 Md. 603, 39, A. 2d 820. There is no question as to identification of appellant. The demonstration with the rifle (to which he did not object) merely gave him an opportunity to explain and reconcile his defenses of accident and self-defense.

In short, it appears from the petition itself that, if the writ were granted, appellant would not be entitled to any relief.

"The writ of *habeas corpus* is a high prerogative writ, given by the common law, and made effective and enforced by statute, the great object of which is the liberation of parties who may be imprisoned or detained without sufficient cause." *State v. Glenn, supra,* 54 Md. 607. "It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I." *Secretary of State for Home Affairs v. O'Brien* [1923] A. C. 603, 609. The principal statute by which it might be enforced, "the famous *habeas corpus* act, 31 Car. II. c. 2," was "frequently considered as an-

[2] In some circumstances "the use of the writ in the federal courts to test the constitutional validity of a conviction for crime is not restricted to those cases where the judgment of conviction is void for want of jurisdiction of the trial court to render it. It extends also to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights." *Waley v. Johnston,* 316 U. S. 101, 105, 62 S. Ct. 964, 966, 86 L. Ed. 1302.

other *magna carta* of the kingdom." *Blackstone's Commentaries, III*, p. 135.

Chancellor Kilty reported (in 1810) that the statute of 31 Car. II was applicable to local circumstances, but was not proper to be incorporated into the statute law of Maryland for the reason that it had already been substantially re-enacted, with some changes, in the Maryland Act of 1809, Chapter 125. *Cf. Ex parte Walsh*, 5 Md. 607, 609. One of the changes was omission of a requirement of prepayment of the charges of bringing the prisoner. Between 1809 and 1939, a number of acts were passed relating to *habeas corpus*. In 1939 the statute law still included provisions corresponding, with more or less change, to six of the seven sections of the Act of 1809 and to the corresponding provisions of the statute of 31 Car. II, Code of 1939, Art. 42, Secs. 3, 4, 8-10, 12-15. The Constitution of 1867 (Art. 3, Sec. 55) prohibits passage of any law "suspending the privilege of the Writ of *Habeas Corpus*." This is not a prohibition of further legislation reasonably regulating the issuance of the writ. *State v. Glenn, supra*, 54 Md. 597.

The writ of *habeas corpus* is a writ of right; it did not, however, at common law or under the statute of 31 Car. II, issue as of course, but on probable cause for it being shown. *Secretary of State for Home Affairs v. O'Brien, supra* [1923] A. C. 618. Opinion on the Writ of *Habeas Corpus*, Wilm. 77, 81-94. "* * * if it issued of mere course, without showing to the Court or judge some reasonable ground for awarding it, a traitor or felon under sentence of death, a soldier or a mariner in the king's service, a wife, a child, a relation or a domestic, confined for insanity or other prudential reasons, might obtain a temporary enlargement by suing out an *habeas corpus*, though sure to be remanded as soon as brought up to the Court." *Blackstone, III*, p. 132. In *Ex parte Walsh*, 1854, 5 Md. 607, 611,[3] a case of alleged insanity,

---

[3] Decided before it was decided that issuance of the writ of habeas corpus is not within the jurisdiction (appellate only) of this Court under the Constitution of 1851 or of 1864 or 1867. Ex parte O'Neill, 1855, 8 Md. 227; Sevinskey v. Wagus, 1892, 76 Md. 335, 336, 25 A. 468.

this Court, in an opinion by Chief Judge LeGrand, refused to issue the writ, saying "no case is made in the petition," and mentioning the danger of issuing the writ without good cause in such a case. In *Norwood v. Martin*, 1810, 3 Har. & J., 199, this Court, instead of issuing the writ, issued an order to show cause, and, after showing of cause and hearing, refused the writ. Such has long been the practice in the Supreme Court and in most of the lower federal courts, under the judiciary act of 1789 and under the more specific provisions that originated in the Act of 1867. 14 Stat. 385. If upon the face of the petition it appears that the prisoner is not entitled to the writ, the Court may refuse to issue it. If the allegations of the petition are inconclusive, an order to show cause may be issued. In this way useless grant of the writ with consequent production of the prisoner may be avoided where from undisputed or incontrovertible facts it appears that no cause for granting the writ exists. *Walker v. Johnston*, 312 U. S. 275, 284, 85 L. Ed. 830; *Ex parte Watkins*, 3 Pet. 193, 201, 7 L. Ed. 650. *Cf. Ex parte Quirin*, 317 U. S. 1, 24, 87 L. Ed. 3.

Nevertheless, for many years before 1941 it was common practice in Maryland to issue the writ of *habeas corpus* as a matter of course. This practice led to growing abuse. Eventually, for some years, the writ was habitually perverted from its great object, and became a device whereby a convicted prisoner could obtain intermission of imprisonment through excursions to distant counties at public expense. The practice became a recognized evil. The legislature by the Act of 1941, Chapter 484 and the Act of 1945, Chapter 702 undertook to remedy the evil.

Whether, by the general language of Sections 3 and 14 of Article 42 of the Code of 1939 and the corresponding sections of the Code of 1860 and intervening legislation, judges were required to issue the writ of *habeas corpus* as of course, is a question which it is not necessary to consider. If they were, any such requirement

348

has been removed, and the practice in this respect under the more restricted language of the statute of 31 Car. II and the Act of 1809 has been restored, by amendment of Section 3 and repeal of Section 14[4] by the Act of 1941 and enactment of Section 3B by the Act of 1945. Section 3 provides that the courts or judges to whom complaint is made "shall, *unless it appears from the complaint itself or the documents annexed that the petitioner would not be entitled to any relief*, forthwith grant the writ of *habeas corpus*" (italics supplied, to indicate the 1941 amendment), *Cf.* 28 U. S. C. Sec. 455, 28 U. S. C. A. Sec. 455, R. S. Sec. 755; *Walker v. Johnston*, 312 U. S. 275, 283-284, 85 L. Ed. 830. Section 3B provides that the judge "may, at his discretion, dismiss the petition or require it to be amended or otherwise amplified unless the application alleges facts sufficient, if true, to probably show that the applicant is illegally detained."

Since it appears from the petition itself that appellant is legally detained and would not be entitled to any relief, the petition was properly dismissed and the order must be affirmed. This conclusion makes it unnecessary to consider the lower court's findings as to previous applications and hearings before Judge Grason and Judge Cobourn. In his brief in this Court appellant says that there was no previous hearing before Judge Grason and that some of the grounds for present application were not presented to Judge Cobourn.

Appellant asked "to be allowed to prosecute his appeal in *forma pauperis.*" He also asked that counsel be appointed for him or, in the alternative, that he be permitted to argue his appeal orally. Section 3C of Article 42 provides that on appeal this Court "may permit a hearing on the original papers" and that "the appeal may be prosecuted without payment of costs if the trial judge so orders, or if permitted by the Court of Appeals on application." We have already permitted this appeal

4 "If any judge, whether in court or out of court, shall refuse any writ of habeas corpus by this article required to be granted, he shall be liable to the action of the party aggrieved."

to be prosecuted on the original papers, without any prepayment of costs. The application for permission "to prosecute his appeal in *forma pauperis*" is therefore denied.

From careful examination of the papers (including petitioner's brief in the lower court) and from appellant's brief in this Court, we found no need for appointment of counsel. Appellant's application for appointment of counsel was therefore denied. *Cf. Howell v. Amrine,* 155 Kan. 185, 123 P. 2d 954. His application for permission to argue his appeal in person was also denied. Assuming that we have power to order his removal for this purpose, we see no adequate reason for exercising such power. An application for *habeas corpus* is not a criminal proceeding. *Ex parte Tom Tong,* 108 U. S. 556, 559-560, 27 L. Ed. 826; *Riddle v. Dyche,* 262 U. S. 333, 335-336, 67 L. Ed. 1009; *Bell v. State,* 4 Gill 301, 305, 45 Am. Dec. 130; *Ex parte Costom,* 23 Md. 271, 273. Even in a criminal prosecution for felony the right of the accused to be present throughout the trial, *Duffy v. State,* 151 Md. 456, 472-477, 135 A. 189, is not applicable to proceedings in an appellate court. *Schwab v. Berggren,* 143 U. S. 442, 447, 36 L. Ed. 218. "We know of no precedent for taking a prisoner from the penitentiary that he might be present to argue in person his appeal from an adverse judgment on *habeas corpus.*" *Goldsmith v. Sanford,* 5 Cir., 132 F. 2d 126, 127, *certiorari* denied. 318 U. S. 744, 87 L. Ed. 1122; 318 U. S. 762, 87 L. Ed. 1134; 318 U. S. 799, 87 L. Ed. 1163.

*Order Affirmed with costs.*