**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  1280

September Term, 2013

---

IN RE GUARDIANSHIP OF ZEALAND W.
AND SOPHIA W.

---

Graeff,
Arthur,
Salmon, James P.
   (Retired, Specially Assigned),

JJ.

---

Opinion by Salmon, J.

---

Filed: October 29, 2014

This interlocutory appeal originated in a guardianship case that involves Zealand W. (born September 9, 2000) and Zealand's sister, Sophia W. (born January 11, 2003). The appellant in this case is Susan W., the mother of Zealand and Sophia. The appellee is Conway Tattersall ["Mr. Tattersall"].

On September 20, 2012, David W., the father of Zealand and Sophia, died in Montgomery County, Maryland. Five days after David W.'s death, his first cousin, Mr. Tattersall, filed a guardianship action in the Circuit Court for Montgomery County. Mr. Tattersall alleged that Susan W. was unfit to be the guardian of her children. In his petition, Mr. Tattersall asserted that the Circuit Court for Montgomery County had a right to appoint a guardian of the person of both Zealand and Sophia pursuant to Md. Code (2011 Repl. Vol.), Estates & Trusts Article, section 13-702(a), which provides:

> (a) *General Rule* - <u>If neither parent is serving as guardian of the person</u> and no testamentary appointment has been made, on petition by any person interested in the welfare of the minor, and after notice and hearing, the court may appoint a guardian of the person of an unmarried minor. If the minor has attained his 14th birthday, and if the person otherwise is qualified, the court shall appoint a person designated by the minor, unless the decision is not in the best interests of the minor. This section may not be construed to require court appointment of a guardian of the person of a minor if there is no good reason, such as a dispute, for a court appointment.

(Emphasis added).

Mr. Tattersall contends that section 13-702(a) allowed the court to appoint a guardian because neither parent was serving as guardian of the children and no testamentary appointment had been made. In this appeal, Susan W. contends that section 13-702(a) did not grant the circuit court "subject matter" jurisdiction to appoint a guardian of the person

of her minor children because, after the death of David W., she, as a matter of law, was serving as the guardian of the person of the children. In support of her position, Susan W. primarily relies on the case of *In re: Adoption/Guardianship of Tracy K.*, 434 Md. 198 (2013). As a consequence of the circuit court's [alleged] lack of jurisdiction, Susan W. contends that the court erred in signing various interlocutory orders in this case. Recognizing, impliedly at least, that most of the orders signed thus far were interlocutory, and thus not appealable, she focuses on four orders signed by the court that she contends are interlocutory orders from which an appeal may be filed pursuant to Md. Code (2006 Repl. Vol.) Courts & Judicial Proceedings Article ("CJ") section 12-303(3). The relevant interlocutory orders are: (1) an order entered on July 25, 2013 directing Susan W. to pay a custody evaluator $5,000; (2) an order entered on August 15, 2013 denying Susan W.'s motion for the issuance of a writ of *habeas corpus*; (3) an order entered on October 25, 2013 holding Susan W. in contempt for failure to pay $5,000 to the custody evaluator; and (4) an order dated October 25, 2013, entering judgment in the amount of $5,000 against Susan W.

Mr. Tattersall did not file a brief with this Court. Instead, Mr. Tattersall, by counsel, filed on June 6, 2014, a "line" addressed to the clerk of this Court. The "line" advised the clerk that Mr. Tattersall "opposes the [a]ppeal and the brief filed by Susan W." In support of that "line," counsel for Mr. Tattersall relied upon pleadings that Mr. Tattersall, along with the Best Interest Attorney for the children, filed in opposition to Susan W.'s motion to dismiss the case for lack of subject matter jurisdiction.

For the reasons set forth below, we conclude that although the circuit court did have subject matter jurisdiction to appoint a guardian, the court did not appropriately exercise that jurisdiction in this case. Because the court did not appropriately exercise its jurisdiction, we shall hold: (1) that the circuit court erred in holding Susan W. in contempt and in directing that a $5,000 judgment against her should be entered; and (2) that the court erred in ordering that Susan W. pay fees to a custody evaluator. In regard to the appeal from the denial of a writ of *habeas corpus*, we shall hold that such an appeal is not allowed.

## I.

### FACTS AND PROCEEDINGS

The circuit court file in this case already includes almost 200 docket entries. But, for purposes of deciding these interlocutory appeals, it is unnecessary for us to summarize most of the pleadings or orders that have been filed thus far. Accordingly, the summary set forth below is limited to a recap of the facts, pleadings and orders necessary to put in context the issues presented.

Susan W. and David W. were married on February 7, 2000. Zealand, now thirteen, and Sophia, now eleven, were born to the marriage. During the marriage, Susan W. and her husband lived in Spartanburg County, South Carolina. The parties were divorced on August 22, 2005 by the Seventh Judicial Circuit for the State of South Carolina. At the time of the divorce, David W., was awarded custody of Zealand and Sophia. Susan W. was granted visitation rights, but visitation with her children was required to be supervised by relatives.

The reason that Susan W.'s visitation rights were ordered to be supervised was because she had a history of serious alcohol abuse. From the time of the divorce up until September 20, 2012, when David W. died, Susan W. never had custody of her children and visitation was always supervised.

Approximately one year prior to his death, David W. and the two children moved to Montgomery County, Maryland. Five days after David W.'s death, Mr. Tattersall, who usually lives in Australia, filed a pleading entitled "Emergency Petition for the Appointment of Temporary and Permanent Guardians of the Person of Minors" (the Petition). He alleged that Susan W., the mother of the minor children, currently lived in Huntington, West Virginia but was not "an appropriate person" to care for the minor children because: (1) she lives with her parents in West Virginia; (2) she has had "long periods of unemployment in the past;" (3) she has a "lengthy history of serious neglect of the minor children;" and (4) she "has a long-standing history of alcoholism and bulimia."

Mr. Tattersall further alleged in the Petition that the two children were currently living with Tim Pirrone and Satomi Pirrone in Rockville, Maryland. According to the Petition, Mr. and Mrs. Pirrone were friends of the late David W. Mr. Tattersall requested that the Pirrones be appointed temporary co-guardians of the person of the two minor children on an emergency basis. The Petition also stated that the action was brought pursuant to Md. Code, Estates & Trusts Article, section 13-702.

On the same day that the Petition was filed, an emergency hearing was held in the

-4-

Circuit Court for Montgomery County. Susan W. and her parents were in attendance at the hearing as was Mr. Tattersall and his counsel. Susan W., who was not represented by counsel, opposed the appointment of a guardian of the person of her children. Nevertheless, the circuit court appointed Mr. and Mrs. Pirrone as temporary co-guardians of the person of Zealand and Sophia. Susan W. was granted the right to have supervised visitation with her children.

On September 27, 2012, Steve Gaba, Esquire, was appointed by the court as the Best Interest Attorney for Zealand and Sophia. Four days later, on October 1, 2012, Susan W. and her parents, Gene R. Weekley and Willa M. Weekley, *pro se*, filed a motion to strike the order appointing temporary guardians of the minor children. They asked that Mr. and Mrs. Weekley, the children's maternal grandparents, be appointed Zealand and Sophia's temporary guardians.

On November 29, 2012, Mr. Tattersall, by counsel, filed a pleading entitled "Motion to Appoint a Substitute Temporary Guardian of the Person of Minors." Movant alleged that Mr. and Mrs. Pirrone were no longer "able to provide a home for the minor children." Movant asked the court to appoint "either Jim Wood of Easton, Maryland or Darrin Wolfe of Durham, North Carolina as the substitute temporary guardian of the minor children." Movant alleged that both Mr. Wood and Mr. Wolfe "and their families have been close family friends of the minor children and [their father] . . . for many years."

The maternal grandparents, by counsel, filed a "Counter-Petition for Guardianship of

the Person and the Property of the Minor Children" on November 30, 2012. They requested in their counter-petition that the court appoint them as temporary and permanent guardians of their grandchildren. On the same date, the maternal grandparents filed an opposition to Mr. Tattersall's November 29, 2012 petition.

The court, on December 14, 2012, appointed Mr. Tattersall, who at that time was temporarily living in Rockville, Maryland, as the substitute temporary guardian of the person of the minor children. The order provided that the children's maternal grandparents would be given certain visitation rights with their grandchildren, but that Susan W. would be granted no rights of visitation, although she was allowed to have telephone contact with the children twice weekly.

On January 16, 2013, the court appointed Darrin Wolfe and his wife, Hilary Wolfe, who reside in Durham, North Carolina, as temporary co-guardians of the minor children. That order was consented to by the maternal grandparents and all other parties except for Susan W.

On July 19, 2013, Susan W., represented by new counsel, filed a motion to dismiss the case based on (1) failure to state a claim upon which relief can be granted, and (2) lack of subject matter jurisdiction. Movant's counsel argued:

> The jurisdictional problem . . . is that a cousin [Mr. Tattersall], distant or otherwise, has no statutory right under Estates and Trusts Article § 13-702 to seek the appointment of a guardian of the person of a minor child, whose father is deceased, but whose mother is alive and available to raise the child.
>
> [I]n Montgomery County, only the Department of Health and Human

-6-

Services may successfully file a court petition[,] without parental consent[,] for the appointment of a guardian for a minor child with a living parent available to raise that child.

The court appointment of a guardian of a child with a living parent is a serious intrusion by the state into a family's Constitutionally-protected private affairs, and, in effect, terminates and/or suspends the parental rights of the living parent. *See Carroll County Dept. of Social Services v. Edelmann,* 320 Md. 150, 175 (1990):

> The only express statutory authorization for a court to terminate parental rights and obligations short of adoption is contained in the Family Law Article, § 5-313 and §5-317 [now §5-320, *et seq*.], which permit a circuit court to determine those rights and obligations through a decree of guardianship.

Under current Family Law Article § 5-320, *et seq*., like the limitations embedded in the guardianship appointment provisions in the Estate and Trusts Article, a court (in Montgomery County, the Juvenile Division of the Circuit Court) is empowered to grant a guardianship <u>only</u> if the local office of the Department of Health and Human Services filed or did not object to the petition <u>and</u>, in the absence of an adversarial termination of parental rights, the child's parent consents in writing, knowingly and voluntarily, on the record before the juvenile court.

(Footnote omitted).

*        *        *

In the memorandum in support of the motion to dismiss, Susan W.'s counsel maintained that in the subject case the answer to the question of whether the court had the right to appoint a guardian of the person of a minor child under section 13-702 of the Estates and Trusts Article depended on whether, at the time of the appointment, "neither parent is serving as guardian." Counsel for movant contended that Susan W. was serving as guardian of her children. Her counsel relied on an interpretation of section 13-702 of the Estates &

Trusts Article by the Attorney General of Maryland, 77 OP. Atty. Gen. 41, 44 (March 20, 1992). The opinion read, in pertinent part:

> Although the phrase "neither parent is serving as guardian" in ET §13-702(a) is not defined, that provision reasonably must be interpreted to refer to the instance in which there is no surviving parent who is legally responsible for the minor, either because both parents are deceased or the surviving parent is no longer legally responsible for the minor.

Counsel for Susan W. further pointed out that Md. Code (2012 Repl. Vol.), Family Law Article ("FL") § 5-203(a)(2)(i) provides that a parent becomes "the sole natural guardian of the minor child if the other parent . . . dies."[1]

Mr. Tattersall, by counsel, and the Best Interest Attorney, filed oppositions to the motion to dismiss. Both Mr. Tattersall and the Best Interest Attorney argued that section 13-

---

[1] In her memorandum in support of her dismissal motion, Susan W. ("Mother") also made clear her disagreement with Mr. Tattersall's characterization of her as an unfit parent, saying:

> While it is difficult to predict the future, Mother is looking ahead to a rewarding and productive life with her two children. She is gainfully employed as a dietician for Sodexho, a position with health insurance coverage which will cover her children. She has a commodious three-bedroom apartment, has already met with local school administrators in the district in which she lives, and has reached out to therapists who can and will help her and her children adjust to their new living arrangements.
>
> Finally, to ensure as best she can that she continues to constructively move forward, she faithfully attends AA meetings and continues with a sponsor, sees a therapist, and has a great deal of love and support from people in her community, in addition to the children's grandparents and other extended family.

702(a) of the Estates & Trusts Article, did give the court subject matter jurisdiction in this

case. They argued as follows:

> Here, although only one parent is deceased[,] for at least the past six years the
> surviving parent, Susan [W], has repeatedly been denied custody of her
> children and has only been granted supervised visits with her children. She
> therefore has not been *responsible for* or acted as the caretaker for her children
> without supervision for six years. Under these extreme facts, the statutory
> requirement that "neither parent is serving as guardian of the person" is met,
> and therefore the Court has the authority to grant guardianship in this matter.[2]

On July 25, 2013, while the motion to dismiss for lack of subject matter jurisdiction

was pending, the circuit court passed an order appointing Dr. Rebecca Snyder "to conduct

a forensic fitness and custody evaluation regarding the custody[3] and guardianship" of the

minor children. Among other things, Dr. Snyder was given the task of producing "an

---

[2]Substantively, the oppositions of the Best Interest Attorney and Mr. Tattersall
were identical. Both the Best Interest Attorney and Mr. Tattersall, in opposition to Susan
W.'s motion to dismiss, argued that Susan W. has already been deemed "unfit" to have
custody of her children because previously, South Carolina judges had "repeatedly
denied" her custody of the minor children. It is true that at the time that the South
Carolina courts were called upon to decide who should have custody of the minor
children, it was determined that, at that time, Susan W. was unfit to have custody. But no
court has ruled that she should be denied all her parental rights. And, as will be explained
*infra*, in Maryland, in cases where a living parent objects, the only way a parent can be
deprived of his/her parental rights is pursuant to a proceeding brought under title 5 of the
Family Law Article. Here, if such a proceeding had been brought in Montgomery
County, the Montgomery County Department of Human Services would have had to
prove by clear and convincing evidence that Susan W. was presently unfit, or that
exceptional circumstances existed. *See Rashawn H.,* 402 Md. at 477, 499 (2007). That is
a substantially greater burden than the one imposed when a court makes a custody
determination. In custody cases, the evidence supporting the custody award must be by a
"mere preponderance." *Id.*

[3]This case is not now, nor has it ever been, a custody case.

updated" forensic custody evaluation of the maternal grandparents of the children, to determine their fitness and "appropriateness" to be appointed as permanent guardians of the person of the minor children. Prior to making such a determination, Dr. Snyder was instructed to perform such psychological testing, as well as forensic interviews "as she deems necessary . . . ." The July 25, 2013 order additionally provided that within ten days, Mr. Tattersall was to advance Dr. Snyder $5,000 and Susan W. and her parents collectively, were to advance an additional $5,000 towards payment of Dr. Snyder's fees. The order also provided that "all additional fees and costs" were to be apportioned one-half to Mr. Tattersall and one-half to Susan W. and her parents. Additionally, the court ordered Susan W. and her parents, within fifteen days of submission, "to pay their one-half share of the amounts shown in all invoices submitted" by Dr. Snyder.

Susan W., on August 5, 2013, filed a motion for issuance of a writ of *habeas corpus*. Movant stated that the writ was requested by her on behalf of her two minor children. She asked that the court issue a writ of *habeas corpus* directing Darrin Wolfe and Hilary Wolfe "to produce the children and appear with them before this [c]ourt to show cause why the children should not immediately be returned to their mother." According to the motion, a writ of *habeas corpus* was authorized by CJ sections 3-701- 3-702.

The circuit court, on August 15, 2013, denied the request for the issuance of a writ of *habeas corpus*. Eight days later, Susan W. filed a notice of interlocutory appeal to this Court. The notice of appeal stated that the appeal was from the denial of the writ of *habeas*

*corpus* and from "related earlier underlying orders, decisions and rulings, including[,] but not limited to[,] the orders directing a 'custody evaluation' and the payment of professional fees and suit moneys in connection with this case."

The circuit court, on September 25, 2013, denied Susan W.'s July 19, 2013 motion to dismiss. One month later, the court signed an order allowing the children's maternal grandparents to withdraw their counter-petition, in which they had asked the court to appoint them as guardians.

On October 25, 2013, the circuit court entered an order that read, insofar as here pertinent:

> ORDERED, that . . . Susan [W.], be held in Contempt for failure to comply with the terms of this Court's Order docketed herein at Docket Entry #111 regarding payment of fees for [Dr.] Rebecca Snyder . . .; and it is further,
>
> ORDERED, that a judgment be entered against . . . Susan [W.] and in favor of [Dr.] Rebecca Snyder . . . in the amount of $5,000; and it is further,
>
> * * *
>
> ORDERED, that the Contempt finding and sanction will be purged upon payment of this judgment.

Susan W. filed a second notice of interlocutory appeal on November 8, 2013.

In December of 2013, while this appeal was pending, the circuit court held a hearing, and afterwards, on January 22, 2014, entered an order that, insofar as here pertinent, continued the Wolfes as temporary guardians of the person of the two children. The court's order stated that an earlier order passed by the court that restricted contact between Susan W.

-11-

and her children remain in effect. In addition, the January 22, 2014 order placed numerous restrictions on Susan W.'s activities including a requirement that she wear an alcohol monitoring bracelet, attend alcoholics anonymous meetings and therapy sessions, and execute various releases.

## II.

### DISCUSSION

CJ section 12-304(a) allows an interlocutory appeal from any order "adjudging any person in contempt . . . ." In addition, CJ section 12-303(3)(v) allows an interlocutory appeal from any order for the payment of money. And, CJ section 12-303(3)(x), allows an interlocutory appeal from any order "[d]epriving a parent . . . of the care and custody of his child . . . ."

Even when interlocutory appeals are permitted, however, such an appeal must be filed within thirty days of the entry of the order from which the appeal is taken. If the appeal is not filed within thirty days after the entry of an appealable interlocutory order, this Court lacks jurisdiction to entertain the interlocutory appeal. *See* Maryland Rule 8-202(a) ("[T]he notice of appeal shall be filed within thirty days after entry of the . . . order from which the appeal is taken."). *See also Stevens v. Tokuda*, 216 Md. App. 155, 164-65 (2014), and *In re Ariel G.*, 153 Md. App. 698, 704 (2003).

In her brief, Susan W. asked us to vacate "any extant guardianship orders" signed by the circuit court. Technically, we do not have jurisdiction to vacate such orders because all

guardianship orders entered in this case were docketed either: (1) more than thirty days <u>prior</u> to the earliest date that Susan W. filed a notice of interlocutory appeal, or (2) <u>after</u> the last notice of appeal was filed by appellant. Nevertheless, we shall review the question of whether Susan W. is correct when she argues that the circuit court erred when it appointed guardians in this case pursuant to section 13-702 of the Estates & Trusts Article. Such a review is necessary for two reasons: (1) to decide issues that were the appropriate subject of an interlocutory appeal; and (2) for the guidance of the circuit court upon remand.

In *Carroll County Dept. of Social Services v. Edelmann,* 320 Md. at 176, the Court of Appeals said:

> Absent specific statutory authorization which does not now exist in this State, a circuit court has no authority to terminate a parental relationship other than through a decree of adoption or guardianship under title 5, subtitle 3 of the Family Law Article.

As pointed out, *supra*, section 13-702 of the Estates & Trusts Article, allows the court to appoint a guardian of the person of a minor "[i]f neither parent is serving as guardian of the person and no testamentary appointment has been made . . . ." Here, no testamentary appointment was made - nor could a valid appointment have been made by David W. because Susan W. was alive at the time of his death.

FL section 5-203(b) provides: "The parents of a minor child, as defined in Article 1, § 24 of this Code: (1) are jointly and severally responsible for the child's support, care, nurture, welfare and education; and (2) have the same powers and duties in relation to the child."

-13-

FL, section 5-203(a) reads as follows:

> (a) *Natural guardianship.* – (1) <u>The parents are the joint natural guardians of their minor child</u>.
>     (2) <u>A parent is the sole natural guardian of the minor child if the other parent</u>;
>         (i) <u>dies</u>;
>         (ii) abandons the family; or
>         (iii) is incapable of acting as a parent.

(Emphasis supplied).

It is clear from the language used in FL, section 5-203 that Susan W. was, as of the date David W. died: 1) "responsible for her children; and 2) their natural guardian.

Susan W.'s rights as a parent have never been terminated pursuant to title 5, subtitle 3 of the Family Law Article. Under such circumstances, section 13-702 of the Estates & Trusts Article gave the court no authority to appoint a guardian of the person of her children.

If, at the time of David W.'s death, Mr. Tattersall, or anyone else, had grounds to believe that Susan W. was not a fit person to have custody of her children, the matter should have been brought to the attention of the Department of Health & Human Services for Montgomery County, so that that Department could attempt to prove, pursuant to FL, section 5-301 *et seq.*, that her parental rights should be terminated and that the Department should be appointed the childrens' guardian.

The case most analogous to the one here at issue is *In re: Adoption/Guardianship* of *Tracy K.*, *supra*. Tracy K. was born in August 1991. 434 Md. at 201. Sometime after his

-14-

birth, Tracy K.'s mother died.[4]  *Id.*  Tracy K. lived with his father, Tracy S. (hereinafter

"Father").  *Id*.  When Tracy K. was fifteen-years-old, he went to live with his maternal aunt,

Jacqueline D.K. (hereinafter "Aunt").  *Id*.  Subsequently, Aunt filed a petition for the

appointment of a guardian of the person of Tracy K. in the Orphans' Court for Prince

George's County, Maryland.  At a hearing held in the Orphans' Court, Tracy K.'s Aunt

testified to the following: (1) no legal proceedings were ongoing currently (or had occurred)

seeking to terminate Father's parental rights; (2) Father refused to help with Tracy K.'s

maintenance; (3) Father refused to consent to the guardianship; and (4) Tracy K. was not

entitled to any funds or property from his mother's estate or any other estate.  *Id*.  The

Orphans' Court dismissed the petition for guardianship for lack of jurisdiction.  *Id*.  In

dismissing the case, the Orphans' Court explained that its jurisdiction is "limited to cases

where a minor would receive assets resulting from someone's death . . . [or] when there's no

surviving parent or when a surviving parent's legal rights to be responsible for the child have

had been terminated." *Id.*  On appeal, the question presented was:

> Does the Orphans' Court have jurisdiction over Petitions for Guardianship of
> the person of a minor child where one of the natural parents is alive, where
> parental rights have not been terminated and no testamentary appointment has
> been made?

*Id*. at 202.

The Court of Appeals answered that question in the negative.  *Id.* at 209.  In reaching

---

[4]The date of Tracy K.'s mother's death is not disclosed in the opinion by the
Maryland Court of Appeals.

-15-

its decision, the Court was required to determine whether section 13-702(a) of the Estates &

Trusts Article expanded the Orphans' Court's jurisdiction. *Id*. Section 13-105(a), of the

Estates & Trusts Article, then, as now, states: "The orphans' courts and the circuit courts

have concurrent jurisdiction over guardians of the person of a minor and over protective

proceedings for minors." In *Tracy K.,* the Court pointed out that section 13-702(a) of the

Estates & Trusts Article limits jurisdiction over guardianship of the person petitions to

situations in which neither parent is a guardian and there is no testamentary grant of

guardianship. *Id*. at 208.

In *Tracy K.*, Aunt asserted that the phrase "neither parent is serving as a guardian"

included circumstances where the parents are not deceased and their parental rights have not

been terminated. *Id.* The Court rejected such an interpretation, and explained:

> We reject the petitioner's proposed interpretation of ET § 13-702(a). This argument is inconsistent with the established jurisdiction over related family law matters. Maryland law grants the circuit and juvenile courts the jurisdiction to terminate parental rights. *See* Maryland Code (1974, 2006 Repl. Vol.), Family Law Article ("FL") § 1-201; *Carroll Cnty. Dep't. of Social Servs. v. Edelmann,* 320 Md. 150, 175-76, 577 A.2d 14, 26 (1990). Until such determination, "[t]he parents [are] the natural guardians of their minor child" and are "responsible for the child's support, care, nurture, welfare, and education." FL § 5-203(a)-(b). Title 5 of the Family Law Article requires the courts to make very specific inquiries into the best interests of the child before ruling on the termination of the parental rights. Under the petitioner's interpretation, the Orphans' Court would have the jurisdiction to determine whether the parent is serving as a guardian, but the statute does not give the Orphans' Court a standard by which to answer this question. It is unlikely that the Legislature intended for the circuit and juvenile courts to engage in an intensive, statutorily-guided, and fact-based inquiry, but left the Orphans' Court to determine its own standard. Without express authority from the Maryland General Assembly, we may not grant, by interpretation, the Orphans'

-16-

Court this additional jurisdiction.

434 Md. at 208-09. (Emphasis added).

What was said in *Tracy K.* is here applicable. Section 13-702(a) of the Estates & Trusts Article does not allow a circuit court judge to appoint a guardian of the person of a minor child where, as here: (1) the mother of the child is still living; and (2) the mother's rights have never been terminated in this state pursuant to Title 5 of the Family Law Article; and 3) parental rights have not been terminated by any other court.

Susan W. contends in this appeal, as she did below, that the circuit court for Montgomery County did not have "subject matter" jurisdiction to appoint a guardian. Technically, the circuit court did have subject matter jurisdiction; it did not, however, have authority under section 13-702 of the Estates and Trusts Article to do so. *See Carroll County Dept. of Social Services v. Edelmann*, 320 Md. at 169-70.

The facts in *Edelmann*, in so far as here relevant, were as follows. Bonnie Clas and David Edelmann were the parents of a minor child named Pamela Sue Reed ("Pamela"). *Id.* at 154. In May 1987, Ms. Clas filed, in the Circuit Court for Carroll County, a petition to terminate Mr. Edelmann's parental rights. *Id.* at 153. She alleged that Mr. Edelmann had not exercised visitation with Pamela for the previous five years and had consented to her petition. *Id.* at 155. Mr. Edelmann's attorney entered his appearance and acknowledged that his client did consent to the termination of his parental rights. *Id.* at 156. The Carroll County Dept. of Social Services (DSS), filed a motion to intervene in the case. It asserted that,

inasmuch as Ms. Clas had been receiving Aid to Families of Dependent Children (AFDC)

monies for the benefit of Pamela and that DSS had been attempting to obtain an agreement

as to child support from Mr. Edelmann, it would be prejudiced if Ms. Clas's petition was

granted. DSS also noted that the granting of Ms. Clas's petition would have the effect of

extinguishing DSS's right to collect future child support from Mr. Edelmann. *Id*. at 156. An

evidentiary hearing was held after which the circuit court found that it would appear to be

in Pamela's best interest if Mr. Edelmann's parental rights were terminated. *Id.* at 159-60.

Ultimately, the circuit court signed an order terminating Mr. Edelmann's parental rights. *Id*.

at 163. On appeal, DSS argued, *inter alia*, that the circuit court had no "jurisdiction" to

terminate Mr. Edelmann's parental rights other than through a judgment of adoption or

guardianship pursuant to Title 5 of the Family Law Article. *Id.* at 169. In *Edelmann*, the

Court made a distinction between cases where the court had no subject matter jurisdiction

and cases where the court has jurisdiction, but inappropriately exercised that jurisdiction. *Id.*

at 169-171. The Court explained:

> As this Court has taken pains to point out in a number of recent cases, the term "jurisdiction" encompasses a number of different meanings. As applied to courts, it refers to "the power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.'" *Pulley v. State, supra,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931, 932 (1870)). We continued in *Pulley* that "[i]f by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction." *Id.* [287 Md.] at 416, 412 A.2d 1244 (quoting *First Federated Com. Tr. v. Comm'r,* 272

-18-

Md. 329, 335, 322 A.2d 539, 543 (1974)) (emphasis in *First Federated*). *See also Block v. State,* 286 Md. 266, 407 A.2d 320 (1979); *Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980).

To some extent, of course, application of this principle depends on how one defines the generic "class of cases." Here, the class is defined by the authority to terminate parental rights and obligations. There is no doubt, and indeed DSS necessarily concedes, that equity courts do have the power – the fundamental jurisdiction – to terminate those rights and obligations. An order of an equity court doing so is therefore not void for want of subject matter jurisdiction. The question rather is under <u>what circumstances the court may appropriately exercise that jurisdiction</u>; is it authorized, by some provision of law or by some inherent authority, to exercise it in this kind of case? That is the issue we need to examine.

*Id*. at 169-70. (Emphasis added).

The important question in the case *sub judice* is not whether subject matter jurisdiction existed; instead, the relevant questions are, as in *Edelmann*: (1) "under what circumstances the court may appropriately exercise" that jurisdiction; and (2) is the court's action "authorized by some provision of law or by some inherent authority to exercise it in this kind of case?"

The *Edelmann* Court concluded that Bonnie Clas's petition to terminate Mr. Edelmann's parental rights should be dismissed. *Id*. at 176. That conclusion was based on the fact that the only "express statutory authorization for a court to terminate parental rights and obligations short of adoption is contained in" sections 5-313 and 5-317 of the Family Law Article,[5] which "permits a circuit court to terminate those rights and obligations through a decree of guardianship." *Id.* at 175. The court went on to say that a decree of guardianship

---

[5]Now codified in FL, section 5-301 - 328.

-19-

under title 5 of the Family Law Article:

> [M]ay be entered only upon petition of a child placement agency or an attorney for the child. Moreover, the statute looks to the termination of the rights of <u>both</u> natural parents and the granting of custody of the child to a child placement agency for adoption. It clearly does not permit the kind of order entered in this case.

*Id*.

The Court added that Mr. Edelmann's reliance on section 1-201(a) of the Family Law Article was misplaced. *Id*. at 175-76. That section then, as now, gives an equity court jurisdiction over "adoption of a child, alimony, annulment of a marriage, divorce, custody or guardianship of a child, visitation of a child, legitimation of a child, paternity, and support of a child." *Id*. In the words of the Court, nothing in that section of the Family Law Article "purports to authorize the court to terminate a parental relationship other than through a decree of adoption or guardianship." *Id.* at 176.

We hold that the circuit court was not authorized, under section 13-702 of the Estates & Trusts Article to appoint a third party as a temporary or permanent guardian of the person of either Zealand or Sophia when (1) the children's mother is alive; (2) mother's parental rights have never been terminated; and (3) no testamentary appointment has been made.

## III.

## THE INTERLOCUTORY ORDERS

As mentioned earlier, the circuit court filed an order dated July 25, 2013, that, *inter alia*, ordered Susan W. and her parents to pay Dr. Snyder, the forensic custody evaluator, the

sum of $5,000. Susan W. filed an interlocutory appeal within thirty days of that order. Later, the court held Susan W. in contempt for failure to pay Dr. Snyder $5,000 and, on the same date, ordered that a $5,000 judgment be entered against Susan W. and in favor of Dr. Snyder. An appeal was filed within thirty days of the entry of those orders.

All the interlocutory orders just mentioned were signed by the trial judge after Susan W.'s counsel had, in a motion to dismiss, argued that the court had no right to appoint a third party to be guardian of Susan W.'s children under section 13-702 of the Estates & Trusts Article. Because, under the circumstances of this case, the court did not have the authority to appoint a guardian under section 13-702 of the Estates and Trusts Article, it follows that the circuit court committed error when it: (1) ordered Susan W. to pay a third party $5,000 to make a determination as to whether someone, other than Susan W., should be the guardian of the children; and (2) holding Susan W. in contempt for failing to make the $5,000 payment. We therefore shall vacate: (1) the portion of the order entered on July 25, 2013, that directed Susan W. to pay Dr. Snyder monies; (2) the order entered on October 25, 2013, entering judgment in the amount of $5,000 in favor of Dr. Snyder and against Susan W.; and (3) the order entered October 25, 2013 holding Susan W. in contempt for failing to pay $5,000 to Dr. Snyder.

**IV.**

**DENIAL OF SUSAN W.'S MOTION FOR ISSUANCE OF A WRIT OF *HABEAS CORPUS***

Susan W.'s motion for a writ of *habeas corpus* requested the court to issue a writ

"directing temporary guardians, Darrin Wolfe and Hilary Wolfe, in whose custody [Zealand W. and Sophia W.] now are as a consequence of a temporary guardianship order issued by this [c]ourt . . ., to produce the children and appear with them before this [c]ourt to show cause why the children should not immediately be returned to their mother." According to Susan W.'s motion, a writ of *habeas corpus* was authorized pursuant to CJ, section 3-702(a),which reads:

> A person committed, detained, confined, or restrained from his lawful liberty <u>within the State</u> for any alleged offense or under any color or pretense or any person in his behalf, may petition for the writ of *habeas corpus* to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into.

(Emphasis added).

The circuit court denied Susan W.'s motion for the issuance of a writ of *habeas corpus*. Within thirty days, Susan W. filed an appeal to this Court from the denial of that writ.

In her brief, Susan W. assumes that she is entitled to file an appeal from a denial by the circuit court of a writ of *habeas corpus*. But an "appeal may be taken from a final order in a *habeas corpus* case only where specifically authorized by statute." *Gluckstern v. Sutton*, 319 Md. 634, 652 (1990). In *Gluckstern*, the Court of Appeals identified four statutes that either permit appeals or permit an application for leave to appeal in *habeas corpus* cases. First, CJ, section 3-707 allows a defendant who seeks a writ of *habeas corpus* because he or she has been denied bail or because excessive bail has been set, to file an application for

-22-

leave to appeal the denial of the writ. Second, section 9-110(c) of the Criminal Procedure Article ("CP") allows an appeal to this Court from the denial of *habeas corpus* relief in extradition cases. Third, CJ, section 3-706 allows an appeal when a writ of *habeas corpus* is issued on the grounds that the law under which the petitioner is held is unconstitutional. Fourth, CP section 7-107, which is part of the Post Conviction Procedure Act, allows a *habeas corpus* appeal in certain criminal cases. None of these four exceptions are even arguably applicable here. Thus, Susan W. had no right to file an appeal to this Court from the circuit court's denial of the writ of *habeas corpus* in this case.[6]

## V.

---

[6]Even if Susan W. did have a right to appeal the denial of the writ, the circuit court clearly did not err in failing to grant it. The writ could be issued pursuant to the statute upon which Susan W. relied [i.e., section 3-701 of the Courts & Judicial Proceedings Article] if she could show that the minor children were being detained in the state of Maryland. Here, it was undisputed that the children were located in North Carolina.

Appellant argues in her brief that a writ of *habeas corpus* directing that the children be immediately returned to Maryland, was authorized by Family Law Article, sections 5-603(2) and section 5-606(a). We disagree. The sections of the Family Law Article upon which Susan W. relies do not apply to this matter. Those sections control the placement of children who are sent or brought to another state by a "sending agency" for placement in foster care "or as a preliminary to a possible adoption." *See* FL, section 5-604(a). The children in this case were not sent to North Carolina for "placement in foster care or as a preliminary to a possible adoption."

We note that CJ, section 3-701 allows a judge of the Maryland Court of Special Appeals or the Court of Appeals to issue a writ of *habeas corpus*. In a separate case, [no. 1514, Sept. Term, 2013], Susan W. applied to a judge of this Court for a writ of *habeas corpus* on the same grounds as those advanced in the circuit court. In a written order filed on October 18, 2013, Judge Douglas R. M. Nazarian, denied the writ on the grounds that neither the children nor Mr. and Mrs. Wolfe were in Maryland at the time the writ was requested.

**CONCLUSION**

This case shall be remanded to the Circuit Court for Montgomery County. For the reasons set forth above, we conclude that the circuit court has no authority to appoint a temporary or permanent guardian of the person of the minor children under section 13-702(a) of the Estates & Trusts Article. With that in mind, the circuit court should reconsider Susan W.'s motion to dismiss this case.

**APPEAL FROM THE DENIAL OF A WRIT OF *HABEAS CORPUS* IS DISMISSED; THE COURT'S ORDERS HOLDING SUSAN W. IN CONTEMPT, ORDERING SUSAN W. TO PAY $5,000 TO THE CUSTODY EVALUATOR AND THE ORDER ENTERING JUDGMENT IN THE AMOUNT OF $5,000 AGAINST SUSAN W. AND IN FAVOR OF DR. REBECCA SNYDER ARE VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSIST WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE PAID 75% BY P. CONWAY TATTERSALL AND 25% BY SUSAN W.**