Joshua Sabisch v. Stephen T. Moyer et al. Department of Public Safety and Correctional Services, No. 6, September Term, 2019

**PETITION FOR WRIT OF HABEAS CORPUS – MD. CODE ANN., CTS. & JUD. PROC. (1974, 2013 REPL. VOL., 2015 SUPP.) ("CJ") § 3-702(a) – "COMMITTED, DETAINED, CONFINED, OR RESTRAINED FROM [] LAWFUL LIBERTY WITHIN [] STATE" – PROBATION –** Court of Appeals held that, under plain language of CJ § 3-702(a), to be eligible to petition for writ of habeas corpus, person must be "committed, detained, confined, or restrained from his [or her] lawful liberty within [] State[,]" nothing more and nothing less.  At time that petition for writ of habeas corpus was filed, petitioner, who was on unsupervised probation and living in Michigan, was not committed, detained, confined, or restrained in Maryland, as required by CJ § 3-702(a), and thus was not eligible to seek habeas corpus relief in Maryland.

Court of Appeals concluded that, consistent with historic purpose of writ of habeas corpus, plain language of CJ § 3-702(a) does not limit eligibility for habeas corpus relief to those in physical custody.  Under plain language of CJ § 3-702(a), petition for writ of habeas corpus is not foreclosed where person is placed on probation with conditions that significantly restrict or restrain person's lawful liberty within State.  Court concluded that people who are committed, detained, or confined within State or persons on probation with conditions that significantly restrain person's lawful liberty within State are entitled to seek habeas corpus relief.  In short, under CJ § 3-702(a)'s plain language, to be eligible to seek habeas corpus relief, person must be committed, detained, confined, or restrained in Maryland, which may involve physical custody or significant restrictions of person's lawful liberty within State.

IN THE COURT OF APPEALS

OF MARYLAND

No. 6

September Term, 2019

_____

JOSHUA SABISCH

v.

STEPHEN T. MOYER ET AL.
DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Battaglia, Lynne A. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: November 20, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A writ of habeas corpus—meaning "that you have the body" in Law Latin—is "employed to bring a person before a court, most frequently to ensure that the person's imprisonment or detention is not illegal[.]" *Habeas Corpus*, Black's Law Dictionary (11th ed. 2019). This Court has observed that "the great object" of a writ of habeas corpus "is the liberation of parties who may be imprisoned or detained without sufficient cause." Olewiler v. Brady, 185 Md. 341, 345, 44 A.2d 807, 809 (1945) (cleaned up). The common law writ of habeas corpus was codified in a Maryland statute in 1809, and later encompassed by the protections of the Maryland Constitution of 1867. See id. at 346, 44 A.2d at 809. Specifically, the Maryland Constitution provides that "[t]he General Assembly shall pass no Law suspending the privilege of the Writ of Habeas Corpus." Md. Const., Art. III, § 55.

Today, Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol., 2015 Supp.) ("CJ") § 3-702(a) generally governs who may petition for a writ of habeas corpus, providing:

> A person committed, detained, confined, or restrained from his [or her] lawful liberty within the State for any alleged offense or under any color or pretense or any person in his [or her] behalf, may petition for the writ of habeas corpus to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into.

Upon receipt of a properly filed petition for a writ of habeas corpus, among other things, "the judge shall grant the writ unless[] the judge finds . . . that the individual confined or restrained is not entitled to any relief[.]" Md. R. 15-303(e)(3)(A).

In this case, we must determine whether a person who was placed on unsupervised probation by a Maryland trial court and subsequently moved to another State was

committed, detained, confined, or restrained within Maryland. Following a bench trial in the District Court of Maryland, sitting in Baltimore County, Joshua Sabisch, Petitioner, was found guilty of fourth-degree sex offense. The District Court stayed the entry of judgment and offered Sabisch probation before judgment ("PBJ") with conditions, which he accepted. Five months later, Sabisch appeared before the District Court for a violation of probation hearing, and the District Court found that Sabisch had violated his probation. The District Court modified the conditions of probation to be "unsupervised" to accommodate Sabisch's desire to move from Maryland to Michigan. Sabisch subsequently filed in the Circuit Court for Baltimore County a petition for a writ of habeas corpus, alleging that the terms of his probation constituted an unlawful restraint on his liberty and raising various grounds for relief related to the proceedings in the District Court.[1] At a hearing on the petition, the circuit court denied the petition. Sabisch appealed, and, in an unreported opinion, the Court of Special Appeals granted Respondents' motion to dismiss, holding that, at the time that Sabisch filed the petition for a writ of habeas corpus, he was neither physically restrained nor within the State. Thereafter, Sabisch filed in this Court a petition for a writ of *certiorari*, which we granted.

Against this backdrop, we must decide whether the Court of Special Appeals erred in holding that, to be entitled to habeas corpus relief pursuant to CJ § 3-702(a), a person must be physically restrained within Maryland, and that Sabisch was not entitled to habeas

---

[1]Stephen T. Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services, Joseph F. Clocker, Director of Parole and Probation, and Ashley Jung, Sabisch's probation agent (collectively, "Respondents"), identified in the petition as the respondents, opposed the petition.

corpus relief because he was not physically restrained within the State. We hold that, under the plain language of CJ § 3-702(a), to be eligible to petition for a writ of habeas corpus, a person must be "committed, detained, confined, or restrained from his [or her] lawful liberty within the State[,]" nothing more and nothing less. The plain language of CJ § 3-702(a) does not limit eligibility for habeas corpus relief to those in physical restraint. Under the plain language of CJ § 3-702(a), a petition for a writ of habeas corpus is not foreclosed where a person is placed on probation with conditions that significantly restrict or restrain the person's liberty within the State. We hold that people who are committed, detained, or confined within the State or persons on probation with conditions that significantly restrain the person's lawful liberty within the State are entitled to seek habeas corpus relief. In short, under CJ § 3-702(a), to be eligible to seek habeas corpus relief, a person must be committed, detained, confined, or restrained in the State, which may involve physical custody or significant restrictions of a person's liberty within the State. Here, when the petition for a writ of habeas corpus was filed, Sabisch, who was on unsupervised probation and living in Michigan, was not committed, detained, confined, or restrained in Maryland, as required by CJ § 3-702(a). Under the circumstances of this case, when Sabisch filed his habeas corpus petition, he was not significantly restrained in Maryland, and thus was not eligible to seek habeas corpus relief in Maryland pursuant to CJ § 3-702(a).

## BACKGROUND

Although the issues in this case do not involve resolution of the merits of the claims that Sabisch raised in the petition for a writ of habeas corpus, for context, we set forth the circumstances that gave rise to the imposition of probation and conditions of probation.

**Pretrial Proceedings in the District Court**

In 2016, the District Court tried Sabisch on the sole count of fourth-degree sex offense. It was alleged that Sabisch had sexual intercourse with a fourteen-year-old girl and that he was at least four years older than she was. See Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2015 Supp.) § 3-308(b)(3) ("A person may not engage in . . . vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 4 years older than the victim.").

On October 26, 2016, Sabisch appeared, without counsel, in the District Court for the first time, seeking a postponement of the trial date. When Sabisch's case was called, the prosecutor explained that the State was not opposed to a postponement. The District Court asked Sabisch whether he had heard the court "explain the importance of having an attorney to the other" defendants who preceded him on the court's docket, and Sabisch responded "[y]es." The District Court asked Sabisch: "What are you going to do about getting an attorney?" Sabisch responded that he had not "thought about it[,]" and the following exchange occurred:

> THE COURT: All right. Well, you need to think about it. You need to either hire private counsel, pay them and have them enter their appearance on your behalf. Or make application to the Office of the Public Defender if you cannot afford private counsel. That's their information, sir. You need to see them at that location in person that's listed there in Towson immediately. Don't wait. This week or next week. You would not want to come back without an attorney and attempt to represent yourself. It would not be in your interest; do you understand that, sir?
>
> [SABISCH]: Yes.

(Paragraph breaks omitted).

**Trial Proceedings in the District Court and Probation Before Judgment**

On December 8, 2016, Sabisch appeared, without counsel, in the District Court for trial. The prosecutor advised the District Court that it was his "understanding [that] Sab[]i[s]ch [was] entering a guilty plea to his sole charge[,]" and Sabisch agreed that that was correct. At that time, the District Court gave Sabisch the following advisements:

> THE COURT: Sir, the maximum possible penalty of this charge is one year in jail. The State is deferring to me. That[] means they're saying, Judge, it's up to you. I want you to understand I could still impose that maximum sentence. Do you understand that?
>
> [] SAB[]I[S]CH: Yes.
>
> THE COURT: Now, I want you to understand that you certainly don't have to plead guilty. You are entitled to either a judge or a jury trial. In either instance, what would happen is, the State would call in witnesses that they had. They would testify in the witness chair like this one to my left. You could question any witnesses that are called against you. You could call witnesses on your own behalf. You could call yourself as a witness. Or you could say, you choose a judge trial, which you didn't want to testify. If you did that, I would not draw any inference from your silence. If this case was called for a jury trial and a jury was provided, you could tell the judge presiding at that jury trial that you did not want to testify. And the judge would tell those jurors they could draw no inference from your silence.
> Now, for a trial like that, a judge or a jury, it would be up to the State to prove beyond a reasonable doubt respectively to the fact finder, be that a judge or a jury, that you were guilty of the charge. Now, if it was a jury trial, the jury's verdict would have to be unanimous. That means all 12 jurors would have to agree. By proceeding like this, pleading guilty, you're waiving your right to have a judge and a jury trial. Do you understand that?
>
> [] SAB[]I[S]CH: Yes.
>
> THE COURT: Sir, if you were on parole or probation to anybody on August the 20th when this event allegedly occurred, the plea that you're entering here in all likelihood would violate that parole or probation. Do you understand that?
>
> [] SAB[]I[S]CH: Yes.

THE COURT: Sir, the offense you're pleading guilty to is that you engaged in intercourse with a person 14-years-old, you being at least four years old[er] than the victim. Are you admitting that in fact that your defenses to that offense, it is correct that you did that?

[] SAB[]I[S]CH: Yes.

The District Court asked whether it was Sabisch's "final decision to plead guilty[,]" and Sabisch responded that he would "like to have the witness come forward." The following exchange occurred:

THE COURT: All right. So do you want to plead guilty or do you want to have a trial?

[] SAB[]I[S]CH: What happens if I -- I don't quite understand if I have a trial.

THE COURT: So if you had a trial, what's going to happen is, as I explained to you, witnesses will testify. And you question those witnesses, you could call witnesses on your own behalf. You could testify yourself if you want to or you can remain silent, as I explained to you. It will be up to the State to prove beyond a reasonable doubt that you're guilty of the charge. You have the right to have your case tried. You also certainly have the right to accept the plea. In either instance, you're going to be able to address me in terms of the case. If you plead guilty, however, you're not going to be able, effectively, to stand up and say[:] well, I want to tell you this didn't happen. If you want to give me what's called mitigation through yourself or through someone else in terms of an explanation as to why this happened, you can do that. But again, you have the right to have a trial. Nobody's trying to talk you out of that. Most importantly, I'm not trying to talk you out of that.

So you are in a situation right now where you have the right to either have a trial before me and a trial before a jury or proceed by way of a guilty plea the State told me that you guys agreed to. Do you understand the three options you have?

[] SAB[]I[S]CH: I want a trial.

THE COURT: Do you want to have your case tried before me or do you want to have it tried before a jury?

[] SAB[]I[S]CH: Before you.

Although Sabisch advised the District Court that he wanted to proceed by way of a bench trial, Sabisch also continued to tell the District Court that he wanted to plead guilty. At that time, the District Court indicated that Sabisch apparently did not understand the legal consequence of a guilty plea, and the following exchange ensued:

> THE COURT: Okay. Now, I'm not going to continue to go back and forth. Not because I don't want to, but effectively unless someone is entering what's called a knowing and voluntary guilty plea, I'm just going to enter a not guilty plea on your behalf and call the case for a trial. If you enter a guilty plea, all that's going to happen is, the State's Attorney is going to tell me what happened here. After I've heard that, you're going to have the opportunity to address me and tell me why it happened and anything else you want to tell me. As I told you, if you plead guilty, the one thing you can't do is, you can't then stand up and say, Judge, it didn't happen. Because you're admitting if you plead guilty.
> If you want to plead not guilty, there's going to be live testimony. The State's going to call witnesses.

> [] SAB[]I[S]CH: I plead not guilty.

> THE COURT: You want to plead guilty?

> [] SAB[]I[S]CH: Not guilty.

> THE COURT: Not guilty.

The District Court took a brief recess, and asked Sabisch for his "final decision[.]" Sabisch advised that he was asking for a postponement "[t]o get a Public Defender." The District Court asked Sabisch what he had done to obtain a lawyer since October—when he was advised of his right to a Public Defender—and Sabisch responded:

> I've been trying to get, because I'm on [Supplemental Security Income], and I've been trying to get the money to save out, but I've also, because I've been homeless, trying to get an apartment and transportation, it's very hard for me. But I'm aware of these charges and I will work even

harder if you give me a postponement to get an attorney. I can even go down today to fill out and get a Public Defender.

The District Court denied the request for a postponement, and the following exchange occurred:

> THE COURT: I'm going to have to deny your postponement request, Mr. Sab[]i[s]ch, under the circumstances. Now, you have the right to have your case tried before a jury or a judge. A few minutes ago you indicated to me you wanted to have your case tried before a judge and you're waiving your right to a jury trial, is that correct?
>
> [] SAB[]I[S]CH: I honestly don't understand, but I'd like to plead guilty. I mean, I don't understand any of this, because I've never really done this before.
>
> THE COURT: All right. I've explained to you a couple of times about the difference between a guilty plea and a not guilty plea. And I'm candidly not convinced that you understand what a guilty plea is. And I can only accept the guilty plea if I'm convinced that it's a knowing[] and a voluntary plea, and it's an intelligent plea. And it's that third element that I'm struggling with and I'm not convinced you understand what it is. Because you told me you have a witness here.

Shortly thereafter, a short bench trial occurred. As the sole witness for the State, the victim, who was fourteen years old at the time of trial, testified that she met Sabisch on the internet. The victim testified that, while she was fourteen years old, she had vaginal intercourse with Sabisch, who was twenty years old. Sabisch called the victim's mother as a witness. On cross-examination, the victim's mother acknowledged that, "[f]rom what [she had been] told," the victim and Sabisch had vaginal intercourse.

The District Court asked Sabisch whether he would like to testify or remain silent, and Sabisch responded: "I want a jury trial." The District Court explained that a jury trial was no longer an option, and again asked Sabisch whether he wanted to testify or remain

- 8 -

silent.  After briefly conferring with an assistant public defender who happened to be in the courtroom, Sabisch advised that he would "like to remain silent."

The District Court found Sabisch guilty of fourth-degree sexual offense, but stayed the entry of judgment and offered him PBJ.  The District Court explained that probation would be supervised for twelve months, and would require Sabisch to comply with probation conditions, including no contact with the victim, a substance abuse evaluation, "regist[ration] with law enforcement[,]" and waiver of the right to appeal.  Sabisch told the District Court that he did not understand PBJ, and the following exchange occurred:

> THE COURT: So there's a guilty finding that I made, but I struck it in favor of probation before judgment.  Now, if you want to accept it, you are waiving your right to an appeal, because there's no guilty finding to appeal to.  If you violate my probation, there's 12 months incarceration that is hanging over your head, if you will.  And if you violate my probation, I will put you in jail.  But hopefully that will not come to pass.
>   Having said all of this, do you now understand what probation before judgment is?
>
> [] SAB[]I[S]CH: Yes, I do.
>
> THE COURT: Do you want to accept it and waive your right to an appeal?
>
> [] SAB[]I[S]CH: I do.

The bench trial concluded shortly thereafter.

**Post-Trial Proceedings in the District Court**

A week later, on December 15, 2016, Sabisch—now represented by counsel—filed a motion for modification or reduction of his sentence under Maryland Rule 4-345(e). Sabisch requested that the District Court strike the requirement that he register as a sex offender, arguing that registration was within a trial court's discretion when imposing PBJ

and, in his view, requiring him to register was contrary to the "ultimate sentence of probation before judgment." Sabisch also offered to undergo a psychiatric evaluation. The District Court held the motion *sub curia*.

Approximately eight weeks later, on February 8, 2017, Sabisch pled not guilty to charges that he violated his probation by having contact with the victim. Sabisch also indicated that he was "not competent to stand trial[.]" The District Court ordered a competency evaluation, and a forensic psychologist found that Sabisch was competent because he demonstrated an understanding of "the nature and object of the proceedings and [an ability to] assist in his defense." On his own initiative, on March 3, 2017, Sabisch submitted to another psychological evaluation. The results of that evaluation revealed that Sabisch presented symptoms of bipolar disorder, borderline personality disorder, and unspecified intellectual disability, and that Sabisch had a low-functioning cognitive ability and an IQ of 59.

On May 3, 2017, the District Court conducted a violation of probation hearing; Sabisch was represented by counsel. The District Court found that Sabisch had violated probation by contacting the victim. Sabisch asked the District Court to modify his sentence to allow him to move back to Michigan, where he lived before he met the victim and where his family lived. The District Court left the PBJ finding intact and agreed to modify the conditions of probation to accommodate Sabisch's desire to move out of Maryland. The District Court imposed a sentence of eighteen-months "unsupervised" probation that permitted Sabisch to leave Maryland, but, as conditions of probation, required him to among other things, have no unsupervised contact with minors, report to his probation

agent by telephone every thirty days or as otherwise determined appropriate by the probation agent, provide his current address, and register as a Tier I Sex Offender.[2]

After returning to Michigan, Sabisch learned that, under Michigan law, he would be designated as a Tier III sex offender and required to register as a sex offender for life.

**Petition for a Writ of Error Coram Nobis**

Meanwhile, on April 10, 2017, Sabisch filed in the District Court a petition for a writ of error coram nobis, asking the District Court to vacate the December 8, 2017 PBJ order for alleged trial errors. The District Court denied the petition on the ground that Sabisch was on probation, and thus ineligible for coram nobis relief. Sabisch appealed. In June 2017, the circuit court dismissed the appeal on the same ground.

**Petition for a Writ of Habeas Corpus in the Circuit Court**

The following month, on July 3, 2017, in the circuit court, Sabisch filed a petition for a writ of habeas corpus, requesting that the circuit court "remedy the unlawful restraint on his liberty by the Department of Public Safety and Correctional Services through the Division of Parole and Probation." Sabisch alleged that the unlawful restraint on his liberty consisted of being "subject to unsupervised probation with the special condition that he report to [] his probation agent in Baltimore County[] by phone each month." (Citations omitted). Although in the petition Sabisch mentioned other conditions of probation, he did not allege that those conditions constituted unlawful restraints on his liberty. Sabisch

---

[2]Pursuant to CP §§ 11-701(o)(1), 11-707(a)(4)(i), and 11-707(c), in Maryland, as a Tier I sex offender, Sabisch is required to register for ten to fifteen years, depending on whether certain conditions are satisfied for ten years.

alleged the following four grounds for relief: (1) he did not knowingly and voluntarily waive his right to counsel; (2) he did not knowingly and voluntarily waive his right to a jury trial; (3) in accepting the PBJ, he did not knowingly and voluntarily waive his right to appeal; and (4) the District Court erred by failing to conduct an inquiry to determine whether he "was mentally competent to represent himself." (Citations omitted). Sabisch asked the circuit court to issue a writ of habeas corpus, vacate the finding of guilt, and order a new trial.

On July 17, 2017, the State[3] filed an answer to the petition, opposing the petition on multiple grounds. The State argued that, procedurally, the petition was inadequate for two reasons: (1) Sabisch was not eligible for habeas relief in Maryland while he was in Michigan, *i.e.*, an individual seeking habeas relief must "be restrained from lawful liberty within the State[,]" and Sabisch filed his petition while in Michigan; and (2) Sabisch had failed to pursue other avenues of relief, such as a motion for new trial under Maryland Rule 4-331 or a notice of appeal under Maryland Rule 7-104. (Emphasis omitted). As to the merits, the State asserted that the petition was inadequate for several reasons, including that the "[a]dequacy of counsel is not reviewable under a writ of *habeas corpus*" (footnote omitted); Sabisch had knowingly and voluntarily waived his right to a jury trial and requested a bench trial; and Sabisch had knowingly and voluntarily waived his right to appeal by accepting the PBJ. Finally, as to Sabisch's competency, the State maintained

---

[3]Although the petition named Stephen T. Moyer, Secretary of the Department of Public Safety and Correctional Services, Joseph F. Clocker, Director of Parole and Probation, and Ashley Jung, Sabisch's probation agent, as respondents, the answer was filed on behalf of the State.

that the District Court was not required to have Sabisch evaluated and contended that Sabisch's "confusion with court proceedings did not demonstrate a failure to understand the nature and object of the proceedings or [his] inability to assist in his defense." (Emphasis omitted).

On October 13, 2017, the circuit court held a hearing on the petition. At the hearing, the prosecutor asserted that, although Sabisch was still on probation, he was not "being restricted by anything in Maryland[,]" arguing:

> [T]he real reason we're here today is because [the District Court] ordered [Sabisch] to register as a tier one sex offender, which carries, my understanding, in Maryland ten years, ten years of registration, [the District Court] gave him the benefit of [PBJ]. That is, those are the conditions of his probation here. Because [] Sabisch decided to leave, because he decided to go to Michigan, . . . he is being required to register for life. Now, I don't believe that is a confinement. It was his decision to go to Michigan. I didn't tell him to go to Michigan.

Sabisch's counsel responded that probation was a restraint on liberty and, therefore, Sabisch was eligible to pursue habeas relief. Sabisch's counsel contended that Sabisch was not disqualified from seeking a writ of habeas corpus simply because he resided in Michigan. According to Sabisch's counsel, Sabisch had restraints on his liberty in Maryland because he was still subject to the terms of the probation imposed by the District Court. Additionally, Sabisch's counsel argued that the District Court failed to inform Sabisch of his right to counsel and of the importance of counsel. At the conclusion of the hearing, the circuit court denied the petition for a writ of habeas corpus, stating: "It's my judgment, based on the colloquy between [the District Court] and [Sabisch], that [the District Court] complied with the rule, that [Sabisch] understood what he was doing and,

- 13 -

therefore, [] your writ is denied."

On November 22, 2017, the circuit court issued an order denying the petition for a writ of habeas corpus. The circuit court also issued a memorandum opinion explaining the reasons for denial of the petition for a writ of habeas corpus. In the memorandum opinion, as to the procedural issues in the case, the circuit court rejected the State's argument that Sabisch was not in Maryland for purposes of pursing habeas relief, explaining:

> [Sabisch], while living in Michigan, is subject to specific terms and conditions of probation imposed by [the District Court]. As such, [Sabisch] does not have unfettered liberty. The State's implied request that the Petition be denied because [Sabisch] does not live in Maryland is denied.

The circuit court nevertheless agreed with the State that the record demonstrated that Sabisch "knowingly waived his right to appeal[,]" as Sabisch "could have appealed the District Court's ruling, but chose not to do so." As such, the circuit court stated that, "[o]n that basis, the Petition [] would be denied."

The circuit court noted that, had Sabisch "elected to appeal, the matter would have been de novo and the other issues set forth in the Petition would not have been at issue. However, because the issues were briefed and argued," the circuit court would "address them." Accordingly, the circuit court addressed the merits of the various issues raised in the petition. As to the waiver of counsel, the circuit court concluded that "[i]t [was] clear from the record that [Sabisch] was aware of the charges and possible penalties, the right to counsel[,] and the importance of assistance of counsel[,]" and that "it was not an abuse of discretion for [the District Court] to find that [Sabisch] waived his right to counsel by inaction." The circuit court explained:

[The District Court] told [Sabisch] that it would not be in his best interest to return to Court without an attorney and [Sabisch] confirmed that he understood that. Never[]the[]less, [Sabisch] appeared for trial in the District Court without counsel in December 2016. In viewing the record as a whole, including the discussions that [Sabisch] had with [the District Court], it is clear that when [Sabisch] indicated that he did not understand, the [District Court] took [its] time to explain the matter to him until he comprehended.

As to waiver of the right to a jury trial, the circuit court determined that there was no evidence that Sabisch "did not make a knowing and voluntary waiver of his right to a jury trial." The circuit court explained that "[t]here was no evidence presented concerning [Sabisch]'s IQ, nor that he did not understand [the District Court]'s explanation concerning the difference between a court and jury trial. . . . [Sabisch] has failed to set forth any evidence that he did not understand the difference between a court and a jury trial." The circuit court reiterated that the record showed that, when Sabisch "did not understand something[,] the [District Court] took [its] time to explain the matters to him until he understood."

The circuit court concluded that Sabisch had validly waived the right to appeal, explaining:

> [Sabisch]'s counsel argues that [Sabisch]'s limited IQ would have prevented him from understanding and appreciating the significance of accepting [PBJ]. [Sabisch] bears the burden of proving his allegations. He has presented no evidence concerning his IQ, nor did he present any evidence that he did not understand that by accepting [PBJ], he would no longer have a right to appeal.

The circuit court rejected the allegation that the District Court failed to determine whether Sabisch was competent to represent himself, stating that there was "no credible evidence that [Sabisch] was incompetent or lacked the mental capacity to appreciate the

- 15 -

consequences of his decisions."

In the meantime, on October 18, 2017, Sabisch filed a notice of appeal.

**Opinion of the Court of Special Appeals**

On January 2, 2019, the Court of Special Appeals granted the State's motion to dismiss the appeal for lack of subject-matter jurisdiction. See Joshua Sabisch v. Stephen T. Moyer, et al., No. 1858, Sept. Term, 2017, 2019 WL 290291, at *1, 5-6 (Md. Ct. Spec. App. Jan. 2, 2019). The Court of Special Appeals held that, when Sabisch filed the petition for a writ of habeas corpus, Sabisch was neither physically restrained nor within the State, and, therefore, the Court lacked jurisdiction to consider or provide habeas corpus relief. See id. at *5-6.

Specifically, the Court of Special Appeals determined that, although CJ § 3-702(a) "does not use the word 'physical,' Maryland case law does[,]" and "Maryland courts have held consistently that the writ of *habeas corpus* is not available to bailees or parolees because they are not in 'actual, involuntary, illegal restraint.'" Id. at *5 (cleaned up). The Court of Special Appeals explained:

> Yes, there are more recent federal cases that define restraint more in terms of liberty restrictions than physical restrictions, and it[ is] also true that some Maryland cases interpreting the Uniform Postconviction Procedure Act ("UPPA") have as well. But the federal cases do[ not] work—the UPPA occupies most of the field that the federal *habeas corpus* statute covers in the federal system, and the General Assembly has left a much narrower range of potential relief for *habeas* to provide.

Id. As such, the Court of Special Appeals concluded that, given the

> limited context of *habeas corpus* in Maryland, [] Sabisch's [PBJ] status places him in the same position as parolees and people out on bail—his liberty was fettered, to be sure, but he was not committed, detained, confined,

- 16 -

or restrained, and we do[ not] have jurisdiction to consider *habeas corpus* relief for him.

Id.

The Court of Special Appeals noted that "Sabisch was not in Maryland when he filed his petition[.]" Id. at *6. The Court of Special Appeals explained:

> While he was on unsupervised probation, his ongoing requirement to check in with a probation officer fell short of creating a presence in Maryland that could justify common law *habeas corpus* relief here. [] Sabisch is[ not] wrong that federal cases interpreting the federal counterpart writ focus more on the physical location of the custodian than the petitioner. But again, the federal version of the writ has a different scope, and unlike federal courts, Maryland courts can[not] compel production of a body that[ is] outside of our borders.

Id. (cleaned up). Accordingly, the Court of Special Appeals granted the motion to dismiss the appeal and did not consider the merits of the issues raised in the petition for a writ of habeas corpus. See id. The Court of Special Appeals observed, though, that Sabisch may not be "out of options" because, "[a]s both sides acknowledged at oral argument, he has now completed his probation, and thus no longer is barred by that obligation from seeking a writ of coram nobis. Whether he is entitled to relief remains to be seen." Id.

**Petition for a Writ of *Certiorari***

On February 27, 2019, Sabisch petitioned for a writ of *certiorari*, raising the following three issues:

> 1.      Did the Court of Special Appeals err in holding that [Sabisch], while on [PBJ] and required as conditions of his probation to obey all laws, to have no contact with the victim, to have no unsupervised contact with children under age eighteen, to provide his current address to probation authorities, to register as a sex offender, and to report by telephone to his probation supervisor in Maryland every thirty days while residing in Michigan and to follow his supervisor's lawful instructions, was not entitled to petition for the

- 17 -

writ of *habeas corpus* pursuant to [CJ] § 3-702, because he was not subject to "physical" restraint?

2.    Did the Court of Special Appeals err in holding that [Sabisch], while on [PBJ], was not entitled to petition for the writ of *habeas corpus* pursuant to [CJ] § 3-702, because he was not present in Maryland at the time of the filing of his petition and because the conditions of [Sabisch]'s probation did not create a sufficient "presence" in Maryland while [Sabisch] was residing in Michigan?

3.    Did the circuit court err in denying [Sabisch]'s petition for writ of habeas corpus on grounds that [Sabisch] accepted [PBJ] and waived his right to appeal pursuant to Md. Code Ann., Crim. Proc. [(2001, 2008 Repl. Vol., 2015 Supp.) ("CP")] § 6-220?

On April 10, 2019, this Court granted the petition. See Sabisch v. Moyer, 463 Md. 525, 206 A.3d 315 (2019).

## DISCUSSION[4]

### The Parties' Contentions

Sabisch contends that the Court of Special Appeals erred in holding that he was not entitled to habeas corpus relief pursuant to CJ § 3-702 because he was not subject to physical restraint.  Sabisch argues that the plain language of CJ § 3-702(a) does not require a person to be subject to physical restraint to be entitled to habeas corpus relief, and that case law does "not compel adherence to a jurisdictional requirement of physical restraint in a strict sense (e.g., placement behind bars)[.]"  Sabisch asserts that probation, which may

---

[4]Because the first two issues raised in the petition for a writ of *certiorari* involve interpretation and application of CJ § 3-702(a), we consolidate the issues.  And, because we hold that Sabisch was not entitled to seek habeas corpus relief under CJ § 3-702(a), we need not—and do not—address the third issue raised in the petition for a writ of *certiorari*, concerning whether the circuit court properly denied habeas corpus relief on the ground that Sabisch accepted PBJ and waived his right to appeal pursuant to CP § 6-220.

- 18 -

require that a person comply with a condition "that limits his or her liberties, falls squarely within the requirement that a person petitioning for the writ of habeas corpus be restrained from his [or her] lawful liberty." (Cleaned up). Sabisch maintains that, unlike the terms "committed," "detained," and "confined," the word "restrained," as used in CJ § 3-702(a), does not necessarily imply application of physical force. According to Sabisch, at the time that he filed the petition for a writ of habeas corpus, he was subject to actual restraint by operation of the various conditions of his probation.

Sabisch contends that the Court of Special Appeals also erred in holding that he was not entitled to petition for a writ of habeas corpus because he was not in Maryland at the time of the filing of the petition and because the conditions of his probation did not create a sufficient presence in Maryland while he was living in Michigan. Sabisch argues that physical presence in Maryland at the time of filing a habeas corpus petition is not a jurisdictional requirement of CJ § 3-702(a). Sabisch maintains that, for purposes of CJ § 3-702(a), "the critical presence is that of the custodian or respondent, because if Maryland does not have personal jurisdiction over the respondent, no inquiry may be made into the cause of the commitment, detainer, confinement, or restraint."

Respondents counter that "the circuit court lacked subject-matter jurisdiction over" the petition for a writ of habeas corpus because, when the petition was filed, "Sabisch was neither in physical custody nor inside Maryland's borders." (Some capitalization omitted). Respondents contend that, as a statute codifying the common law, CJ § 3-702(a) declares the State's public policy with respect to habeas corpus relief, and, in keeping with the common law, the plain language of CJ § 3-702(a) requires physical custody. Respondents

assert that the common law required physical custody, and that Maryland case law has reinforced that requirement. Respondents maintain that CJ § 3-702(a) unambiguously incorporates the common law's physical custody requirement by use of the terms "committed, detained, confined, or restrained," as those "terms denote physical custody." Respondents contend that, when the habeas corpus petition was filed, Sabisch was not in physical custody, but instead was "free on 'unsupervised' probation in Michigan with the duty to call his Maryland probation officer monthly." According to Respondents, because Sabisch was not in physical custody, he was not entitled to petition for a writ of habeas corpus under CJ § 3-702(a).

Respondents argue that, additionally, CJ § 3-702(a) limits who may file a habeas corpus petition to those in custody within the State of Maryland. Respondents assert that, because Sabisch was in Michigan when he filed the petition, he was not authorized to seek a petition for a writ of habeas corpus under CJ § 3-702(a). Respondents contend that "[t]he requirement that a petitioner be in custody 'within' the State is essential to a habeas court's power to compel production of 'the body' and test the lawfulness of custody." (Italics omitted). Respondents argue that the plain language of CJ § 3-702(a) "connects the requisite custody to the petitioner's body" and thus recognizes that Maryland courts cannot compel production of a body that is outside of the State's borders.

**Standard of Review**

"An appellate court reviews without deference a trial court's interpretation of a statute. [And, w]e review the Court of Special Appeals's interpretation of [a] statute *de novo*." Bellard v. State, 452 Md. 467, 480-81, 157 A.3d 272, 280 (2017) (cleaned up).

- 20 -

And, in Wilson v. Simms, 157 Md. App. 82, 91, 849 A.2d 88, 93, cert. denied sub nom. Wilson v. State, 382 Md. 687, 856 A.2d 723 (2004), as to denial of a petition for a writ of habeas corpus, the Court of Special Appeals stated: "We review the denial of an application for habeas corpus relief under the standard set forth in Maryland Rule 8-131(c). We will review the case on both the law and the evidence, and we will not set aside the judgment on the evidence unless clearly erroneous." (Citation omitted). "Questions of law, however, require our non-deferential review. When the trial court's decision involves an interpretation and application of Maryland statutory and case law, this Court must determine whether the trial court's conclusions are legally correct." Estate of Zimmerman v. Blatter, 458 Md. 698, 717-18, 183 A.3d 223, 235 (2018) (cleaned up). See also State v. Hart, 449 Md. 246, 264, 144 A.3d 609, 619 (2016) ("[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are "legally correct" under a *de novo* standard of review." (Citation omitted)).

**Statutory Construction**

Because this case involves statutory interpretation, we set forth the following relevant rules of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according

- 21 -

to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

Bellard, 452 Md. at 481, 157 A.3d at 280 (citation omitted).

## Law

### *Habeas Corpus in Maryland*

CJ § 3-702(a) generally governs who may apply for a writ of habeas corpus, providing in its entirety:

A person committed, detained, confined, or restrained from his [or her] lawful liberty within the State for any alleged offense or under any color or pretense or any person in his [or her] behalf, may petition for the writ of habeas corpus to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into.

This language has remained unchanged since 1973, when Md. Code, Art. 42 (1957, 1973 Supp.), § 3 was recodified as CJ § 3-702(a) as part of the creation of the Courts and Judicial Proceedings Article of the Code of Maryland. See 1973 (July Extraordinary Sess.) Md. Laws 4, 129 (Ch. 2, S.B. 1).

CJ § 3-702(b) sets forth additional provisions related to habeas corpus petitions, including that, upon receiving the petition, a judge shall grant the writ of habeas corpus immediately, if it appears that the petitioner is entitled to the relief. And, Maryland Rules 15-301 to 15-312 implement procedures and requirements related to habeas corpus petitions and proceedings in the State. For example, Maryland Rule 15-302(a) sets forth

the information that a petition for a writ of habeas corpus must include, such as "a statement that the individual by or on behalf of whom the writ is sought is unlawfully confined or restrained[,]" Md. R. 15-302(a)(1), and "the circumstances and the cause of the confinement[,]" Md. R. 15-302(a)(4).

As to appeals in habeas corpus cases, in Gluckstern v. Sutton, 319 Md. 634, 652, 574 A.2d 898, 906 (1990), this Court stated "that statutory provisions like [CJ] § 12-301 [] generally authorizing an 'appeal from a final judgment entered in a civil or criminal case,' do not apply to habeas corpus cases." Rather, "[a]n appeal may be taken from a final order in a habeas corpus case only where specifically authorized by statute." Id. at 652, 574 A.2d at 906 (citations omitted). In Gluckstern, id. at 652, 574 A.2d at 906-07, this Court identified four statutes that permit appeals or applications for leave to appeal in habeas corpus cases: (1) what is now CP § 9-110, which "authorizes an appeal under certain conditions from the denial of a habeas corpus application in an extradition case"; (2) CJ § 3-707, which "provides for applications for leave to appeal from the denial of relief in habeas corpus cases regarding the right to bail or allegedly excessive bail"; (3) CJ § 3-706, which applies where a writ of habeas corpus is issued "on the ground that the law under which the person was convicted is unconstitutional[,]" CJ § 3-706(a); and (4) what is now CP § 7-107, which is part of the UPPA.[5]  (Footnote omitted).

---

[5]CP 7-107(b) provides:

(1) In a case in which a person challenges the validity of confinement under a sentence of imprisonment by seeking the writ of habeas corpus or the writ of coram nobis or by invoking a common law or statutory remedy other than

In separate cases decided several decades ago, this Court held that habeas corpus relief is not available to persons free on bail or parolees. In Hendershott v. Young, 209 Md. 257, 260, 120 A.2d 915, 916 (1956), this Court held that a trial court properly denied a petition for a writ of habeas corpus that was filed by a petitioner who had been released on her own recognizance, but the trial court's decision was "predicated on the wrong grounds[.]" In that case, a Montgomery County lawyer contended that recent legislation from the General Assembly "had abolished the office of justices of the peace, and justices of the peace designated as committing magistrates . . . and transferred all of their former authority, power[,] and jurisdiction to the judges of the newly created People's Court for Montgomery County." Id. at 259, 120 A.2d at 915-16. The lawyer sought to create "a test case to establish that the justices of the peace, and . . . committing magistrates, were without legal power or authority," so the lawyer parked her vehicle in a street intersection in violation of State law. Id. at 259, 120 A.2d at 916. The lawyer refused to sign a summons to appear at the People's Court and instead was taken before "a justice of the peace who

this title, a person may not appeal to the Court of Appeals or the Court of Special Appeals.

(2) This subtitle does not bar an appeal to the Court of Special Appeals:

(i) in a habeas corpus proceeding begun under § 9-110 of this article; or

(ii) in any other proceeding in which a writ of habeas corpus is sought for a purpose other than to challenge the legality of a conviction of a crime or sentence of imprisonment for the conviction of the crime, including confinement as a result of a proceeding under Title 4 of the Correctional Services Article.

acted regularly as a committing magistrate[.]" Id. at 259-60, 120 A.2d at 916. The lawyer then refused to post collateral of $6.45 and was committed to the custody of the Montgomery County sheriff, with bail set at $50. See id. at 260, 120 A.2d at 916. That same afternoon, the lawyer sought habeas corpus relief in the Circuit Court for Montgomery County on the ground that she was being illegally detained, and the court released the lawyer on her own recognizance, pending a hearing on the habeas corpus petition. See id. at 260, 120 A.2d at 916.

At the hearing on the petition, the lawyer argued that her commitment to jail by the justice of the peace was illegal and void because the new laws abolished the justice of the peace's office and transferred that jurisdiction and power to the People's Court. See id. at 260, 120 A.2d at 916. The trial court issued an opinion denying the habeas corpus petition and ruling that the General Assembly did not take away authority from justices of the peace sitting only as committing magistrates, and, therefore, the justice of the peace acted within the scope of his authority and the lawyer was to be remanded to the sheriff's custody "until released by due process of law." Id. at 260, 120 A.2d at 916 (internal quotation mark omitted).

This Court concluded that the lawyer was not entitled to habeas corpus relief for two reasons other than the reason given by the trial court. See id. at 260-63, 120 A.2d at 917. First, this Court held that habeas corpus relief is not available to a person who is free on bail because there is no "actual or physical restraint of" such a person, explaining:

> Traditionally, and in practice, the writ of habeas corpus has been and
> is available only to liberate persons who are in actual, involuntary, illegal
> restraint. The courts have not lent themselves to the issuance of the writ

- 25 -

when restraint was theoretical or technical only, or was actual but by choice, and the real purpose of the writ was to test the validity of a law and not, in fact, to bring about release from involuntary confinement. It is clear that habeas corpus will not be granted one who is free on bail. . . . Unless there be an actual or physical restraint of a person, the writ of habeas corpus may not issue, and a person released from imprisonment on bail is not so restrained of his [or her] liberty as to be entitled to the writ. This statement of the law is supported by the overwhelming weight of authority. . . . Indeed, we do not find a case in the books holding that a person out under bail is so restrained as to entitle him [or her] to the writ. Many courts agree with these holdings.

Id. at 261-62, 120 A.2d at 917 (cleaned up). This Court held that habeas corpus relief also

is not available to an individual whose confinement is voluntary:

Made plain also by the cases is the rule that if the confinement is voluntary, there is no need for the issuance of the writ and it will be denied. In [a California case], the Court held that where the imprisonment involved is voluntary, as where an indicted person on bail procures his [or her] surrender solely to make a habeas corpus case, the writ will not issue. It said: the essential object and purpose of the writ is to inquire into all manner of involuntary restraint, as distinguished from voluntary, and relieve a person therefrom if such restraint is illegal. It was never contemplated, as anciently designed, or as at present guaranteed in the different jurisdictions of this country, that the writ should be invoked [o]n behalf of a person who was not actually in restraint and involuntarily and illegally so[.]

Id. at 262-63, 120 A.2d at 917 (cleaned up).

Applying that law to the circumstances of the case, this Court determined that the

lawyer's "detention and restraint, such as it was, was self-contrived and self-imposed[,]"

and that, after being released on her own recognizance, the lawyer had "been at liberty ever

since." Id. at 264-65, 120 A.2d at 918-19. We concluded that the lawyer was not entitled

to a writ of habeas corpus, and that the trial court "should have denied the writ for the

reasons we ha[d] set forth and need not have and should not have gone into the question of

the jurisdiction and powers of the justice of the peace." Id. at 266, 120 A.2d at 919. As

such, we remanded the case to the trial court for entry of an order dismissing the habeas corpus petition on the grounds set forth in the opinion. See id. at 266, 120 A.2d at 919.

Two years later, in McGloin v. Warden of Md. House of Corr., 215 Md. 630, 630-31, 137 A.2d 659, 660 (1958), where the petitioner was released on parole, this Court held that the case in which the trial court denied a petition for a writ of habeas corpus was moot. In that case, the petitioner was convicted of crimes and sentenced to concurrent terms of imprisonment. See id. at 630, 137 A.2d at 660. The petitioner sought a writ of habeas corpus, contending that one of the sentences was illegal; the trial court rejected that contention and denied the petition; and the petitioner applied for leave to appeal. See id. at 630, 137 A.2d at 660. In the meantime, the petitioner was released on parole, and the State argued that the case was moot as a result. See id. at 631, 137 A.2d at 660. We agreed that the case was moot and denied the application for leave to appeal, explaining:

> [W]e pointed out that it is generally held that a parolee is not entitled to the writ[.] . . . [W]e [have also] cited many cases holding that a person on bail is not entitled to the writ. With the exception of Florida, the [S]tate courts seem to have uniformly held that a parolee is not entitled to the writ. This has also been the rule in the federal courts. A more recent Supreme Court decision casts some doubt upon the proposition, for in [that case], the court intimated that the federal statute should receive a broader interpretation to embrace applications in the nature of the writ of *coram nobis*. But whatever the scope of the federal statute may be, we think the writ of habeas corpus is not available in Maryland under the circumstances of the instant case, and that the case is moot. As we [have] pointed out . . . , there are other means available to raise questions as to the legality of a sentence.

Id. at 631, 137 A.2d at 660 (citations omitted).

More recently, in In re Guardianship of Zealand W., 220 Md. App. 66, 70-71, 102 A.3d 837, 839 (2014), the Court of Special Appeals held that an appeal from the denial of

a petition for a writ of habeas corpus was not allowed. In that case, a mother sought habeas corpus relief, requesting that the trial court direct the temporary guardians of her children to produce the children, appear in court, and show cause why the children should not be returned to the mother. See id. at 87, 102 A.3d at 849. The trial court denied habeas corpus relief, and the mother appealed. See id. at 87, 102 A.3d at 849. The Court of Special Appeals held that the mother "had no right to file an appeal" from the denial of the writ of habeas corpus because none of the four statutory exceptions permitting appeals or applications for leave to appeal in habeas corpus cases were "even arguably applicable[.]" Id. at 87-88, 102 A.3d at 849.

In a footnote, the Court of Special Appeals stated that, even if the mother had a right to appeal, the trial court did not clearly err in denying habeas corpus relief. See id. at 88 n.6, 102 A.3d at 849 n.6. The Court of Special Appeals explained: "The writ could be issued pursuant to the statute upon which [the mother] relied[,] i.e., [CJ § 3-701,] if she could show that the minor children were being detained in the [S]tate of Maryland. It was undisputed that the children were located in North Carolina." Id. at 88 n.6, 102 A.3d at 849 n.6 (cleaned up). The Court of Special Appeals also observed that under CJ § 3-701, in a separate case, the mother had applied to a judge of the Court of Special Appeals for a writ of habeas corpus. See id. at 88 n.6, 102 A.3d at 849 n.6. In that separate case, the judge of the Court of Special Appeals "denied the writ on the grounds that neither the children [nor the temporary guardians] were in Maryland at the time the writ was requested." Id. at 88 n.6, 102 A.3d at 849 n.6.

## The Uniform Postconviction Procedure Act

The Uniform Postconviction Procedure Act, or UPPA, is currently codified at CP §§ 7-101 to 7-301.  The General Assembly first enacted the UPPA in 1958 for the following purposes:

> providing a remedy for challenging the legality of incarceration under judgment of conviction of a crime and sentence of death or imprisonment therefore, including confinement as a result of a proceeding under Article 31B of the Code, but not affecting remedies incident to the proceedings in the trial court and remedies of direct review of the judgment of conviction; providing that hereafter no appeal shall be permitted or entertained in habeas corpus cases and repealing the right of appeal in coram nobis cases or from other common law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment; and providing further, that any person may apply to the Court of Appeals of Maryland for leave to appeal from an order passed under this Act, relating generally thereto and repealing all laws or parts of laws inconsistent herewith to the extent of such inconsistency.

1958 (Reg. Sess.) Md. Laws 178-79 (Ch. 44, S.B. 14).  Indeed, the UPPA, "for the first time, created a statutory remedy under which a prisoner could collaterally challenge the conviction and sentence, or defective delinquency determination, which led to his [or her] incarceration."  Gluckstern, 319 Md. at 658, 574 A.2d at 909.  Moreover, "[t]he purpose of the [UPPA] was to create a simple statutory procedure, in place of the common law habeas corpus and coram nobis remedies, for collateral attacks upon criminal convictions and sentences."  Id. at 658, 574 A.2d at 909 (citations omitted).  More recently, in Douglas v. State, 423 Md. 156, 175, 31 A.3d 250, 261-62 (2011), we discussed the purpose of the UPPA, stating:

> The purpose of the UPPA was to streamline into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are presently available for challenging the validity of a

- 29 -

sentence. The UPPA does not eliminate alternative remedies, such as habeas corpus, coram nobis, or other common law or statutory remedies, though it restricts the right to appeal orders pursuant to those traditional remedies. But where the UPPA does not provide a remedy, the preclusive effects of C.P. § 7-107(b)(1) do not apply. *See Gluckstern []*, 319 Md. [at] 662, 574 A.2d [at] 912 [] (explaining that, "[i]n situations where the Post[c]onviction Procedure Act did not provide a remedy, and thus was not a substitute for habeas corpus, the enactment of the new statute provided no reason for restricting appeals in habeas corpus cases").

(Cleaned up). Moreover, although the UPPA "did not abrogate the remedies formerly available under the writs of habeas corpus and coram nobis and other common-law [] remedies, it clearly took away the right of appeal from an order denying them." Brady v. State, 222 Md. 442, 447, 160 A.2d 912, 915-16 (1960).

In 1965, in relevant part, the General Assembly amended Md. Code, Art. 27 (1957, 1964 Supp.), § 645A(a) "to permit a person on parole or probation to institute a proceeding under the [UPPA.]" 1965 (Reg. Sess.) Md. Laws 634 (Ch. 442, H.B. 901). In other words, the UPPA expressly applies to persons on parole or probation. Currently, CP § 7-101 provides that the UPPA "applies to a person convicted in any court in the State who is: (1) confined under sentence of imprisonment; or (2) on parole or probation." (Paragraph breaks omitted).

### Federal Habeas Corpus Law

Currently, one of the federal habeas corpus statutes, 28 U.S.C. § 2241(c), sets forth who may petition for a writ of habeas corpus, providing:

The writ of habeas corpus shall not extend to a prisoner unless--

(1) He [or she] is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He [or she] is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He [or she], being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him [or her] into court to testify or for trial.

Significantly, federal habeas corpus law has developed on a different trajectory from Maryland over the course of the past century. In Johnson v. Hoy, 227 U.S. 245, 247-48 (1913)—a case that this Court cited in Hendershott, 209 Md. at 262, 120 A.2d at 917—the Supreme Court held that a petitioner was not entitled to habeas corpus relief "because, since the appeal, he has given bond in the district court, and has been released from arrest under the warrant issued on the indictment." The Supreme Court further explained:

> [The petitioner] is no longer in the custody of the marshal to whom the writ is addressed, and from whose custody he seeks to be discharged. The [petitioner] is now at liberty, and having secured the very relief which the writ of habeas corpus was intended to afford to those held under warrants issued on indictments, the appeal must be dismissed.

Johnson, 227 U.S. at 248. A few years later, in Stallings v. Splain, 253 U.S. 339, 343 (1920), the Supreme Court reiterated that a petitioner free on bail "is not entitled to be discharged on habeas corpus. Being no longer under actual restraint within the District of Columbia[,] he was not entitled to the writ of habeas corpus." (Citations omitted).

Since Johnson and Stallings, the Supreme Court has greatly broadened the scope of

- 31 -

those who are eligible to pursue federal habeas corpus relief to encompass persons on parole or probation, as well as those released on bail or on their own recognizance. For example, in Jones v. Cunningham, 371 U.S. 236, 236, 243 (1963), the Supreme Court held that a person who was placed on parole in Virginia was eligible to seek federal habeas corpus relief. In that case, the Supreme Court noted that the federal habeas corpus statute did "not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ c[ould] be used." Id. at 238. Thus, the Supreme Court looked generally at the common-law usages and history of habeas corpus in England and the United States. See id. at 238-40. The Supreme Court observed that "the chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail[,]" but that English courts had not limited habeas corpus relief "only to those in jail or like physical confinement." Id. at 238-39. And, "[s]imilarly, in the United States the use of habeas corpus ha[d] not been restricted to situations in which the applicant [was] in actual, physical custody." Id. at 239. The Supreme Court noted that, "besides physical imprisonment, there [we]re other restraints on a [person]'s liberty, restraints not shared by the public generally, which ha[d] been thought sufficient . . . to support the issuance of habeas corpus." Id. at 240.

With respect to the petitioner's case, the Supreme Court observed that the Virginia parole statute provided that a paroled prisoner was "released into the custody of the Parole Board[,]" and that the parole order placed the "petitioner under the custody and control of the Virginia Parole Board[,]" which "involved significant restrictions on [the] petitioner's liberty[.]" Id. at 241-42 (cleaned up). In the Supreme Court's view, those restraints were

"enough to invoke the help of the" writ of habeas corpus because,

> [w]hile [the] petitioner's parole release[d] him from immediate physical imprisonment, it impose[d] conditions which significantly confine[d] and restrain[ed] his freedom; this [wa]s enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute; if he can prove his allegations this custody is in violation of the Constitution, and it was therefore error for the Court of Appeals to dismiss his case as moot instead of permitting him to add the Parole Board members as respondents.

Id. at 243. And, the Supreme Court stated that the writ of habeas corpus "always could and still can reach behind prison walls and iron bars[,]" as the scope of the writ "has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Id.

Two decades later, in Minnesota v. Murphy, 465 U.S. 420, 422, 430 (1984), the Supreme Court recognized the applicability of its holding in Jones, 371 U.S. 236, to persons on probation. In that case, the Supreme Court stated that the respondent, who was on probation, "was, to be sure, subject to a number of restrictive conditions governing various aspects of his life, and he would be regarded as 'in custody' for purposes of federal habeas corpus." Murphy, 465 U.S. at 430 (citing Jones, 371 U.S. at 241-43).

In Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cty., Cal., 411 U.S. 345, 349 (1973), the Supreme Court held that a person who is released on bail or on his or her own recognizance is in custody for purposes of the federal habeas corpus statute, *i.e.*, that such a person may pursue federal habeas corpus relief. Referring to Jones, 371 U.S. 236, the Supreme Court recognized that a "parolee is generally subject to greater restrictions on his [or her] liberty of movement than a person released on bail or his [or

her] own recognizance[,]" but noted that other courts had "concluded that a person released on bail or his [or her] own recognizance may be 'in custody' within the meaning of the statute." Hensley, 411 U.S. at 348-49 (footnote omitted). The Supreme Court agreed with the reasoning of that line of cases, concluding that the bailee in Hensley was

> subject to restraints not shared by the public generally, that is, the obligation to appear at all times and places as ordered by any court or magistrate of competent jurisdiction. He cannot come and go as he pleases. His freedom of movement rests in the hands of [S]tate judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense.

Id. at 351 (cleaned up). And, in a footnote, the Supreme Court stated that, insofar as previous decisions, such as Stallings, 253 U.S. 339, and Johnson, 227 U.S. 245, "may indicate a narrower reading of the custody requirement, they may no longer be deemed controlling." Hensley, 411 U.S. at 350 n.8.

And, in Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 488 (1973), the Supreme Court addressed "a sharp conflict among the federal courts on the choice of forum where a prisoner attacks an interstate detainer on federal habeas corpus." (Footnote omitted). In that case, an inmate of an Alabama prison filed a petition for a writ of federal habeas corpus in the United States District Court for the Western District of Kentucky. See id. at 485. At issue in the case was whether the federal habeas corpus statute precluded the District Court from considering the petition where a petitioner was not within the territorial limits of the District Court. See id. The Supreme Court held that the District Court was not so precluded, stating that the language of the federal habeas corpus statute "requires nothing more than that the court issuing the writ have jurisdiction over the custodian." Id. at 495.

- 34 -

The Supreme Court explained:

> So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his [or her] claim, or requiring that he [or she] be released outright from custody, even if the prisoner him[- or her]self is confined outside the court's territorial jurisdiction.

Id.

**Analysis**

Here, we hold that, under the plain language of CJ § 3-702(a), to be eligible to petition for a writ of habeas corpus, a person must be "committed, detained, confined, or restrained from his [or her] lawful liberty within the State[,]" nothing more and nothing less. Under the plain language of CJ § 3-702(a), a petition for a writ of habeas corpus is not foreclosed where a person is placed on probation with conditions that significantly restrict or restrain the person's lawful liberty within the State. Cf. Jones, 371 U.S. at 242, 243 ("[T]he custody and control of the Parole Board involves **significant** restraints on petitioner's liberty[,]" and the "conditions and restrictions . . . **significantly** restraint petitioner's liberty[.]" (Emphasis added)). To be sure, in the past, Maryland case law held that the scope of persons entitled to seek habeas corpus relief was narrow and limited to those who were in actual or physical restraint in the State. Indeed, in the past, this Court expressly declined to extend the availability of habeas corpus relief to parolees and persons released on bail. Nevertheless, the plain language of CJ § 3-702(a) is not so limiting. Thus, to the extent that, in Hendershott, 209 Md. at 262, 120 A.2d at 917, and McGloin, 215 Md. at 631, 137 A.2d at 660, we have held that physical custody within the State is necessary for habeas corpus relief, in light of later case law from the United States Supreme Court,

- 35 -

we overrule those cases and hold today that people who are committed, detained, or confined within the State or persons on probation with conditions that significantly restrain the person's lawful liberty within the State are entitled to seek habeas corpus relief. Under CJ § 3-702(a)'s plain language, to be eligible to seek habeas corpus relief, a person must be committed, detained, confined, or restrained in the State, which may involve physical custody or other significant restrictions of a person's lawful liberty within the State. In this case, however, when the petition for a writ of habeas corpus was filed, Sabisch, who was on unsupervised probation and living in Michigan, was not committed, detained, confined, or restrained from his lawful liberty in Maryland. Stated otherwise, under the circumstances of this case, when Sabisch filed his habeas corpus petition, he was not significantly restrained from his lawful liberty in Maryland, and thus was not eligible to seek habeas corpus relief in Maryland pursuant to CJ § 3-702(a).

By its plain language, CJ § 3-702(a) governs who may petition for a writ of habeas corpus, providing that a person who is "committed, detained, confined, or restrained from his [or her] lawful liberty within the State" may petition for a writ of habeas corpus so that "the cause of the commitment, detainer, confinement, or restraint may be inquired into." In other words, to be eligible to pursue habeas corpus relief, a person must be "committed, detained, confined, or restrained . . . within the State[.]" Key to eligibility to seek a petition for a writ of habeas corpus is that the person is being committed, detained, confined, or restrained within Maryland. Indeed, it is clear from CJ § 3-702(a)'s plain language that "[a] person [must be] committed, detained, confined, or restrained from his [or her] lawful liberty **within the State**[,]" *i.e.*, the person must be committed, detained, confined, or

restrained **in Maryland**. (Emphasis added).

Put simply, read to its logical conclusion, CJ § 3-702(a) means that, to be eligible to seek habeas corpus relief in Maryland, a person must be experiencing commitment, detention, confinement, or restraint within Maryland. It makes sense that, to be eligible to seek habeas corpus relief in Maryland, a person must be committed, detained, confined, or restrained within Maryland. A person's presence in a particular jurisdiction is obviously not an issue in the federal habeas corpus arena because the federal government has jurisdiction across the country, and no issue as to extradition or jurisdiction would arise. The United States Supreme Court has stated as much, focusing on the physical location of the custodian rather than the person petitioning for habeas corpus relief. In Braden, 410 U.S. at 485, 495, the Supreme Court concluded that the federal habeas corpus statute "requires nothing more than that the court issuing the writ have jurisdiction over the custodian[,]" notwithstanding whether the petitioner was physically present within the territorial limits of the District Court. This is so because, "even if the prisoner [] is confined outside the court's territorial jurisdiction[,]" "[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his [or her] claim, or requiring that he [or she] be released outright from custody[.]" Id. at 495.

By contrast, under CJ § 3-702(a)'s plain language, to be eligible to seek Maryland habeas corpus relief, the person committed, detained, confined, or restrained must be within Maryland, *i.e.*, within Maryland's jurisdiction. As the Court of Special Appeals noted in Zealand, 220 Md. App. at 88 n.6, 102 A.3d at 849 n.6, even if the mother in that

- 37 -

case had the right to appeal the denial of the writ of habeas corpus, the trial court did not clearly err in denying habeas corpus relief because the minor children were in North Carolina and were not being detained within Maryland. In other words, physical presence in the State is necessary for purposes of habeas corpus relief, and CJ § 3-702(a) expressly connects the requisite physical custody to the body of the person petitioning for habeas corpus relief, recognizing that Maryland courts cannot automatically compel production of a body that is outside the State's borders.[6] Thus, Sabisch was not eligible for habeas corpus relief because he was not committed, detained, confined, or restrained within the State when he filed the petition for a writ of habeas corpus. It simply cannot be said that, while Sabisch was living in Michigan, on unsupervised probation, the conditions of his probation constituted commitment, detainment, confinement, or restraint in Maryland.

Although our analysis could end here and we need not reach the issue of whether physical custody is required under CJ § 3-702(a), because the issue is an important one that has been fully briefed and argued by the parties and resolved by the Court of Special Appeals, we address the matter. We begin by looking to the plain language of the statute.

CJ § 3-702(a) does not use the word "physically" before "committed, detained, confined, or restrained[,]" although the first three terms, given their natural and ordinary meaning, indicate physical custody or a physical component to the commitment, detainer, or confinement. The term "restrained," however, is broader and does not necessarily

---

[6]In Maryland, there are formalized extradition procedures that must be followed to bring someone into the State from another State to appear in a Maryland court. See, e.g., CP §§ 9-101 to 9-128 (Uniform Criminal Extradition Act).

require physical custody, but instead may encompass situations in which a person is significantly restrained but not in actual physical custody, *i.e.,* not confined, detained or committed. Under the circumstances, we think it helpful to briefly turn to the "natural and ordinary meaning" of the terms "committed," "detained," "confined," and "restrained." Bottini v. Dep't of Fin., 450 Md. 177, 195, 147 A.3d 371, 382 (2016) (cleaned up). "To ascertain the natural and ordinary meaning of" these terms, "we look to dictionary definitions as a starting point[,]" as "it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." Id. at 195, 147 A.3d at 382 (cleaned up). Although the language "detained, restrained, or confined" existed in the CJ § 3-702(a)'s earliest predecessor statute that was enacted in 1809, for a plain language analysis, it is helpful to review the current definitions of those terms, as well as the term "committed," as those terms are understood today. Black's Law Dictionary defines "commit," in relevant part, as "[t]o send (a person) to prison or to a mental health facility, esp[ecially] by court order." *Commit*, Black's Law Dictionary. And, in relevant part, "commitment" may be defined as "[t]he act of confining a person in a prison, mental hospital, or other institution; esp[ecially], the sending of a person to jail, by warrant or order, for crime, contempt, or contumacy[.]" *Commitment*, Black's Law Dictionary. Similarly, Merriam-Webster defines "committed," in pertinent part, as being "placed in confinement (as in a mental institution)[.]" *Committed*, Merriam-Wester (2019), https://www.merriamwebster.com/dictionary/committed [https://perma.cc/43FC-R4B9]. Thus, it is evident that the natural and ordinary meaning of the word "committed," as used in CJ § 3-702(a), is actual or physical commitment to a prison, facility, or other institution.

Likewise, "detain" is defined as "to hold or keep in or as if in custody[.]" *Detained*, Merriam-Webster, https://www.merriam-webster.com/dictionary/detained [https://perma. cc/6HDR-HNP6]. And, Black's Law Dictionary defines "detainer" as "[t]he action of detaining, withholding, or keeping something in one's custody." *Detainer*, Black's Law Dictionary. In other words, a person who is "detained" for purposes of CJ § 3-702(a) is physically within the custody of another. The term "confined" is defined, in relevant part, as "kept within confines: such as[] limited to a particular location [or] held captive[.]" *Confined*, Merriam-Webster, https://www.merriam-webster.com/dictionary/confined [https://perma.cc/KF2K-MJFU]. Similarly, Black's Law Dictionary defines the term "confinement" as "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained[.]" *Confinement*, Black's Law Dictionary. Stated otherwise, someone who is confined is physically kept to a particular location, such as a prison.

By contrast, "restrained" is defined as "marked by restraint[,]" *Restrained*, Merriam-Webster, https://merriam-webster.com/dictionary/restrained [https://perma.cc/ 9JY8-QWT6], which, in turn, means "an act of restraining: the state of being restrained" and "a means of restraining[,]" *Restraint*, Merriam-Webster, https://merriamwebster.com/ dictionary/restraint [https://perma.cc/3BCA-6WM7]. Black's Law Dictionary defines the term "restraint," in relevant part, as "[c]onfinement, abridgment, or limitation[.]" *Restraint*, Black's Law Dictionary. And, "restrain" has several definitions, including "to prevent from doing, exhibiting, or expressing something[,]" "to limit, restrict, or keep under control[,]" and "to deprive of liberty[,] especially: to place under arrest or

restraint[.]" *Restrain*, Merriam-Webster, https://merriam-webster.com/dictionary/restrain [https://perma.cc/MG3X-M3BT]. Thus, unlike the terms "committed," "detained," and confined," the term "restrained" does not necessarily imply the use of physical force or control, but instead is more comprehensive, and may encompass significant restraints on a person's lawful liberty that fall short of physical custody.[7]

At bottom, these definitions demonstrate that the plain and ordinary meaning of the terms "committed," "detained," and "confined" involve physical custody, whereas the plain and ordinary meaning of the term "restrained" does not necessarily imply physical custody, but instead may involve significant limitations or restrictions of a person's liberty other than physical custody. Nothing in CJ § 3-702(a) purports to limit the definition of the term "restrained" to physical restraint. In short, under CJ § 3-702(a)'s plain language, to be eligible to seek habeas corpus relief, a person must be committed, detained, confined, or restrained in the State, which may involve physical custody or other significant restrictions of a person's lawful liberty within the State.

Additionally, we observe that the Maryland Rules pertaining to habeas corpus proceedings refer to a person being "confined or restrained," demonstrating that those two terms have different meanings. For example, Maryland Rule 15-302(a)(1) provides that a habeas corpus petition must include "a statement that the individual by or on behalf of whom the writ is sought is unlawfully **confined or restrained**[.]" (Emphasis added). As

---

[7]We note that, in accord, on brief, Sabisch acknowledges that the terms "committed," "confined," and "detained" "connote the application of physical force." He argues, however, that the word "restrained" "does not necessarily imply such." (Citation omitted). We agree.

another example, Maryland Rule 15-303(c), concerning procedure on a habeas corpus petition, provides in relevant part:

> If the petition is made by or on behalf of an individual **confined or restrained** as the result of a prior judicial proceeding, a judge to whom the petition has been made may refer the petition, without taking other action, to the administrative judge of the court in which the prior proceeding was held.

(Emphasis added). Maryland Rules 15-302(a)(1)'s and 15-303(c)'s use of the terms "confined or restrained" leads to the conclusion that those terms mean different things— that "confined" means one thing and "restrained" means another thing, *i.e.*, that "confined" and "restrained" are not synonymous.[8] This is consistent with CJ § 3-702(a)'s use of

---

[8]The background of Maryland Rules 15-302 and 15-303 supports the conclusion that the Standing Committee on Rules of Practice and Procedure ("the Rules Committee") deemed the terms "confined" and "restrained" to mean different things, and that this Court, in adopting the Rules, endorsed that position. Prior to 1996, the Maryland Rules pertaining to habeas corpus were in Chapter 1100 in Subtitle Z. The Rules Committee issued the One Hundred Thirty-Second Report proposing adding Maryland Rules 15-301 to 15-312 as a new separate subtitle concerning habeas corpus. The Reporter's Note to Maryland Rule 15-302 stated, in relevant part: "The pertinent Code provisions use the terms 'commitment,' 'detainer,' 'confinement,' and 'restraint.' The Z Rules, as originally adopted, only use the terms 'confinement' and 'restraint.' This divergence from the language of the Code was probably based on the thought that the terms used in the Code are redundant." The Reporter's Note to Maryland 15-303 stated in relevant part:

> The provision for referral is broadened to cover all petitions based on a confinement or restraint that is the result of a prior adjudication and not just petitions based on a confinement resulting from conviction. Further, the Committee recommends that the Rule permit only the individual confined or restrained, and not a plaintiff who is other than the person confined or restrained, to consent to referral to a judge who sat at the prior proceeding.

On February 6, 1996, and March 5, 1996, the Court held a hearing on the One Hundred Thirty-Second Report. On March 15, 1996, the Rules Committee held a meeting to consider revisions to the proposed Rules of the One Hundred Thirty-Second Report;

different terms—"committed, detained, confined, or restrained"—to mean different things for habeas corpus purposes. Similarly, Maryland Rule 15-301 provides that "[t]he rules in this Chapter apply to all habeas corpus proceedings challenging the legality of the **confinement or restraint** of an individual." (Emphasis added).

Construing the plain language of CJ § 3-702(a) to mean that physical restraint is not required is consistent with the historic purpose of the writ. The writ of habeas corpus is a common law remedy that was imported into Maryland law under Article 5 of the Maryland Declaration of Rights.[9] As we note in the introduction, the General Assembly is limited by Art. III, § 55 of the Maryland Constitution in legislating with respect to the writ. As such, the right to habeas corpus relief is a judicially-created common law right that is governed by judicial development, much as we do in this case, and the General Assembly may regulate the right consistent with the Maryland Constitution, *i.e.*, without suspending the writ. Thus, we look to the historic purpose of the writ as well as the plain language of CJ § 3-702(a). As the Supreme Court observed in Jones, 371 U.S. at 238, although "the chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail[,]" "English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement." The

---

these revisions did not include changes to the Reporter's Notes to proposed Maryland Rules 15-302 and 15-303 or to the language of those Rules as to the use of the terms "confined" and "restrained." On June 5, 1996, the Court adopted the Maryland Rules pertaining to habeas corpus, and on January 1, 1997, the Rules became effective.

[9]In relevant part, Article 5 provides "[t]hat the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six[.]"

Supreme Court noted that, "in the United States[,] the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." Id. at 239. As such, the Supreme Court stated: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Id. at 240.

More recently, in Boumediene v. Bush, 553 U.S. 723, 732, 739-52 (2008), a case in which the Supreme Court considered whether enemy combatants detained at Guantanamo Bay were eligible to seek habeas corpus relief, the Supreme Court discussed the historic purpose and development of the writ of habeas corpus. The Supreme Court stated that "protection for the privilege of habeas corpus was one of the few safeguards of liberty specified in a Constitution that, at the outset, had no Bill of Rights." Id. at 739. Addressing the history of the writ in England, the Supreme Court observed:

> Magna Carta decreed that no man would be imprisoned contrary to the law of the land. Art. 39, in Sources of Our Liberties 17 (R. Perry & J. Cooper eds. 1959) ("No free man shall be taken or imprisoned or dispossessed, or outlawed, or banished, or in any way destroyed, nor will we go upon him, nor send upon him, except by the legal judgment of his peers or by the law of the land").

Boumediene, 553 U.S. at 740. The Supreme Court explained that, over time, the writ of habeas corpus became the means by which the protection of Magna Carta was achieved. See id. (citing 9 W. Holdsworth, A History of English Law 112 (1926)). As to the early American development of the writ, the Supreme Court stated that the Framers of the United States Constitution "considered the writ a vital instrument for the protection of individual

liberty is evident from the care taken to specify the limited grounds for its suspension[.]" Id. at 743.[10]

Because the historic purpose of the writ is clear and the language of CJ § 3-702(a) is unambiguous, we need not resort to a review of its legislative history. We observe that the General Assembly's enactment of the UPPA did not alter the plain language of CJ § 3-702(a) or its predecessor statute. As we have recognized, "[t]he purpose of the [UPPA] was to create a simple statutory procedure, in place of the common law habeas corpus and coram nobis remedies, for collateral attacks upon criminal convictions and sentences." Gluckstern, 319 Md. at 658, 574 A.2d at 909 (citations omitted). Notably, however, "[t]he UPPA does not eliminate alternative remedies, such as habeas corpus, coram nobis, or other common law or statutory remedies, though it restricts the right to appeal orders pursuant to those traditional remedies." Douglas, 423 Md. at 175, 31 A.3d at 261 (citation omitted). Stated otherwise, although the UPPA "took away the right of appeal from an order denying" a writ of habeas corpus, Brady, 222 Md. at 447, 160 A.2d at 916, the UPPA did not otherwise alter habeas corpus relief in Maryland.

---

[10]In Boumediene, 553 U.S. at 740, 747, 752, the Supreme Court cited a law review article that discusses the history of the writ of habeas corpus. See Halliday & White, The Suspension Clause: English Text, Imperial Contexts, and American Implications, 94 Va. L. Rev. 575 (2008). Among matters, the law review article informs that "[t]he Supreme Court, for its part, has consistently maintained that the contemporary constitutional jurisprudence of habeas corpus needs to be informed by the legal and constitutional history of the 'Great Writ,' both in England and in the framing period of the Constitution." Halliday & White, 94 Va. L. Rev. at 580. The law review article states that "the statutory writ was never understood, in the period before the American framing, as superseding the common law habeas jurisprudence." Id. at 631 (footnote omitted).

To the extent that our case law has delineated the bounds of habeas corpus relief in Maryland as being available only to persons who are in actual or physical commitment, detainer, confinement, or restraint, we abrogate those holdings in light of the plain language of CJ § 3-702(a) and the persuasive authority of the Supreme Court's case law.[11] In Hendershott, 209 Md. at 262, 120 A.2d at 917, this Court stated that, "[u]nless there be an actual or physical restraint of a person, the writ of habeas corpus may not issue[.]" Moreover, we explained that, both "[t]raditionally[] and in practice, the writ of habeas corpus has been and is available only to liberate persons who are in actual, involuntary, illegal restraint[,]" and not where "restraint was theoretical or technical only, or was actual but by choice[.]" Id. at 261-62, 120 A.2d at 917. And, this Court has stated that the writ of habeas corpus is not available to persons free on bail or parolees because those persons are not in actual or physical restraint. See id. at 262, 120 A.2d at 917 ("[A] person released from imprisonment on bail is not so restrained of his [or her] liberty as to be entitled to the writ." (Citation omitted)); McGloin, 215 Md. at 631, 137 A.2d at 660 ("[I]t is generally held that a parolee is not entitled to the writ[.]" (Citation omitted)). Insofar as Hendershott

_____

[11]Under the doctrine of *stare decisis*, generally, "a court must follow earlier judicial decisions when the same points arise again in litigation." *Stare Decisis*, Black's Law Dictionary. "[S]tare decisis[, however,] is not absolute." Meyer v. State, 445 Md. 648, 669, 128 A.3d 147, 159 (2015) (cleaned up). Under the two exceptions to "*stare decisis*, an appellate court may overrule a case that either was clearly wrong and contrary to established principles[,] or has been superseded by significant changes in the law or facts." Scott v. State, 454 Md. 146, 183, 164 A.3d 177, 198 (2017) (cleaned up). From our perspective, given the significant changes in federal habeas corpus law implemented by the United States Supreme Court, it is appropriate to abrogate our holdings in Hendershott and McGloin.

and <u>McGloin</u> endorse a narrower reading of the requirement that a petitioner be committed, detained, confined, or restrained from his or her lawful liberty within the State, those holdings are no longer controlling.[12]

From our perspective, the Supreme Court's cases concerning the federal habeas corpus statute are instructive. To be sure, one of the federal habeas corpus statutes, 28 U.S.C. § 2241(c), setting forth who may petition for a writ of habeas corpus, uses the phrase "in custody," which is not used in CJ § 3-702(a). Rather, CJ § 3-702(a) uses the terms "committed, detained, confined, or restrained[,]" which are obviously different from the phrase "in custody" as used in the federal habeas corpus statute. Nevertheless, this Court has previously noted in a postconviction case that the Supreme Court's "expansive interpretation of the 'in custody' requirements of federal [habeas corpus] statutes[,]" although "not binding upon us in our determination of the scope of the custody requirement of [the UPPA,] is persuasive authority[.]" <u>McMannis v. State</u>, 311 Md. 534, 542, 536 A.2d 652, 656 (1988). Just as in <u>McMannis</u>, the Supreme Court's expansive interpretation of the federal habeas corpus statute guides our determination today concerning the scope of habeas corpus relief.

In <u>Jones</u>, 371 U.S. at 236, 238, in holding that a person who was placed on parole in Virginia was eligible to seek federal habeas corpus relief, the Supreme Court noted that

---

[12]We note that <u>Hendershott</u>, 209 Md. at 262, 120 A.2d at 917, cited <u>Johnson</u>, 227 U.S. 245, as one of multiple cases in which courts had held that persons free on bail are not entitled to a writ of habeas corpus. Significantly, <u>Johnson</u> has since been overruled by the Supreme Court as being too narrow a reading of the federal habeas corpus statute's in custody requirement. <u>See</u> <u>Hensley</u>, 411 U.S. at 350 n.8.

the federal habeas corpus statute did "not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ c[ould] be used." And, with respect to the petitioner's case, the Supreme Court observed that the Virginia parole statute provided that a paroled prisoner was released "into the custody of the Parole Board[,]" and that the parole order placed the petitioner "under the custody and control of the Virginia Parole Board[,]" which "involved significant restrictions on [the] petitioner's liberty[.]" Id. at 241-42 (cleaned up). And, in the Supreme Court's view, the conditions of the petitioner's parole, "which significantly confine[d] and restrain[ed the petitioner's] freedom" were "enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute[.]" Id. at 243. Additionally, the Supreme Court specifically recognized that the scope of the writ of habeas corpus in the federal arena had "grown[,]" or expanded. Id.

Murphy, 465 U.S. at 422, 430, and Hensley, 411 U.S. at 349—in which the Supreme Court held, respectively, that persons on probation or released on bail or on his or her own recognizance are "in custody" for purposes of the federal habeas corpus statute—likewise involved interpretation of the federal habeas corpus statute and its use of the phrase "in custody." In Murphy, 465 U.S. at 430, the Supreme Court determined that the probationer "was, to be sure, subject to a number of restrictive conditions governing various aspects of his life, and he would be regarded as 'in custody' for purposes of federal habeas corpus." (Citing Jones, 371 U.S. at 241-43). Among other things, the conditions of probation in that case involved participation in a treatment program for sex offenders, reporting to a probation officer as directed, and being "truthful with the probation officer 'in all matters.'"

- 48 -

<u>Murphy</u>, 465 U.S. at 422. And, in <u>Hensley</u>, 411 U.S. at 348-49, the Supreme Court agreed with the reasoning of other courts that had "concluded that a person released on bail or his [or her] own recognizance may be 'in custody' within the meaning of the statute." (Footnote omitted).

To be certain, in neither <u>Jones</u>, <u>Murphy</u>, nor <u>Hensley</u> did the Supreme Court evaluate Maryland's habeas corpus statute or whether parole and probation in Maryland would be the equivalent of being "in custody" for purposes of the federal habeas corpus statute. And, even had the Supreme Court determined that Maryland parole and probation constitute being "in custody" under the federal habeas corpus statute, that determination would not be dispositive of whether Maryland parole and probation constitute commitment, detainer, confinement, or restraint for purposes of CJ § 3-702(a). Nevertheless, the Supreme Court's holdings in <u>Jones</u>, <u>Murphy</u>, and <u>Hensley</u>, and its expansive view of who is eligible to pursue federal habeas corpus relief inform our analysis of CJ § 3-702(a).

On another note, we observe that some jurisdictions follow the federal habeas corpus approach and have determined that persons on parole or probation, or those free on bail or released on their own recognizance, are permitted to seek habeas corpus relief under State law, and others do not. In one example, in <u>In re Douglas</u>, 200 Cal. App. 4th 236, 246-47 (2011), a California Court of Appeal, citing various California cases, stated:

> Traditionally, a writ of habeas corpus applied to those under actual physical restraint; however, decisional law has expanded the scope of the writ to apply to those in constructive custody situations and today may apply to those on parole, probation, bail, or sentenced prisoners released on their own recognizance pending hearing on the merits of their petition. Without actual

- 49 -

or constructive custody, courts have no authority to grant relief.

(Citations omitted).  As another example, in <u>Noble v. Siwicki</u>, 197 A.2d 298, 300 (R.I. 1964), the Supreme Court of Rhode Island held that persons on probation are eligible to seek State habeas corpus relief, explaining:

> We are of the opinion that the provisions of our statute . . . are of sufficient latitude to enable a person restrained by reason of commitment to the custody of a probation officer to prosecute a writ of habeas corpus to terminate that restraint if unlawfully imposed.  The pertinent portion thereof provides that every person imprisoned in a correctional institution 'or otherwise restrained of his [or her] liberty by any officer or other person' may prosecute a writ of habeas corpus to obtain relief from such restraint if unlawfully imposed.  The view which we take of this statute appears to be consistent with the basic concept set out in Jones[], 371 U.S. 236[.]

<u>See also</u> <u>Escamilla v. Superintendent</u>, 777 S.E.2d 864, 868 (Va. 2015) (The Supreme Court of Virginia held that a person is "detained" for purposes of that State's habeas corpus statute "so long as the sentence under attack has not been 'fully served.'  A petitioner who enjoys physical freedom but remains subject to a sentence not yet fully served, such as a suspended sentence, supervised parole, or probation, is under detention."  (Citation omitted)).

And, some State courts have specifically held, as the Supreme Court has, that parolees may seek habeas corpus relief.  <u>See, e.g.</u>, <u>Caton v. State</u>, 869 N.W.2d 911, 914-15 (Neb. 2015) (The Supreme Court of Nebraska held that "a parolee may seek relief through [the Nebraska] habeas corpus statute."); <u>State ex rel. Atkinson v. Tahash</u>, 142 N.W.2d 294, 298-99 (Minn. 1966) (The Supreme Court of Minnesota held "that a [S]tate prisoner, released from a [S]tate institution and in custody of the Adult Corrections Commission under conditions imposed by that body and subject to revocation, [*i.e.*, a

parolee,] is entitled to the remedy of habeas corpus as used under the practice in this [S]tate as a postconviction remedy."); Sellers v. Bridges, 15 So.2d 293, 294 (Fla. 1943) (The Supreme Court of Florida held that a parolee could seek habeas corpus relief because "[t]he parolee, although at large while on parole, is a prisoner no less than a prisoner physically confined.").

By contrast, some jurisdictions have concluded that, absent physical confinement or restraint, a person is not eligible to seek habeas corpus relief. For example, in People ex rel. Williams v. Morris, 357 N.E.2d 851, 852 (Ill. App. Ct. 1976), the Appellate Court of Illinois held that parolees were not entitled to seek habeas corpus relief under the State statute because, "for purposes of [the State habeas corpus statute], actual custody or imprisonment is required, and, therefore, a parolee contending that he [or she] is entitled to absolute discharge due to the expiration of his [or her] sentence is not entitled to bring a habeas corpus action." The Court further explained:

> We recognize that a parolee remains at all times in the legal custody of the Department of Corrections and subject to the authority of the parole and pardon board until the expiration of his [or her] sentence. However, a parolee is not imprisoned and is subject to reimprisonment only if he [or she] violates a condition of his [or her] parole. No one has actual custody or physical control of the parolee, and where, as here, the parolee is at liberty to come into court on his [or her] own, there is little sense in directing a writ of habeas corpus to a parole officer or parole board whose only authority to take physical custody of the parolee is dependent upon that parolee's breaching of a condition of his [or her] parole. We believe that section 22 of the [State] Habeas Corpus Act is intended to provide relief to a prisoner who has satisfied the judgment under which he is confined and seeks to obtain his [or her] release from imprisonment, and is not susceptible to a 'constructive custody' interpretation.

Id. at 852-53 (citations omitted). And, the Court rejected the petitioner's reliance on Jones,

371 U.S. 236, stating: "Jones is an interpretation of a specific federal habeas corpus statute [] on a nonconstitutional basis, and although persuasive authority, is not binding on this court." Williams, 357 N.E.2d at 853. See also State ex rel. Ali v. Sperbeck, 411 N.Y.S.2d 344, 344 (N.Y. Sup. Ct. 1978) (The Appellate Division of the New York Supreme Court held that a parolee was not entitled to seek habeas corpus relief because his "liberty [was] no longer being restrained in view of his release on parole.").

In Williams v. State, 155 So.2d 322, 323 (Ala. Ct. App. 1963), the Court of Appeals of Alabama held that "[h]abeas corpus is not a [S]tate court remedy available to a parolee in Alabama, who is not otherwise under detention." The Court explained:

> Persons under bail are not restrained of their liberty, so as to be entitled to a discharge on habeas corpus. [I]t seems that, as a general rule, a person placed on parole is not considered as being restrained of his [or her] liberty to such a degree as to be entitled to the benefit of the writ of habeas corpus. Jones[], 371 U.S. 236, [] which deals only with 28 U.S.C.[ §] 2241, [one of the federal habeas corpus statutes,] does not apply here.

Williams, 155 So.2d at 323 (cleaned up). See also Sorrow v. Vickery, 184 S.E.2d 462, 462 (Ga. 1971) (The Supreme Court of Georgia stated "that habeas corpus is available to test the legality of present confinement only, and if the applicant is no longer incarcerated there is nothing for the courts to adjudicate." (Citations omitted)). In short, case law from other jurisdictions demonstrates that habeas corpus relief under a State's statute depends on the language of the statute at issue as well as an analysis of relevant case law, much as we determine here.

Applying the plain language of CJ § 3-702(a) to the circumstances of this case, we conclude that, when the petition for a writ of habeas corpus was filed, Sabisch, who was

on unsupervised probation and living in Michigan, was not committed, detained, confined, or restrained in Maryland, as required by CJ § 3-702(a). In sum, in this case, we conclude that the Court of Special Appeals properly dismissed the appeal, determining that Sabisch was not entitled to seek habeas corpus relief under CJ § 3-702(a). Under the plain language of CJ § 3-702(a), to be eligible to petition for a writ of habeas corpus, a person must be "committed, detained, confined, or restrained from his [or her] lawful liberty within the State[,]" which may involve physical custody or other significant restrictions of a person's lawful liberty within the State. A petition for a writ of habeas corpus is not foreclosed where a person is placed on probation with conditions that significantly restrict or restrain the person's lawful liberty within the State. Here, when the petition for a writ of habeas corpus was filed, Sabisch—who was on unsupervised probation and living in Michigan— was not committed, detained, confined, or restrained in Maryland. Thus, Sabisch was not restrained in Maryland and was not eligible to seek habeas corpus relief in Maryland pursuant to CJ § 3-702(a). Accordingly, we affirm the Court of Special Appeals's judgment, dismissing the appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**